M. KIRBY C. WILCOX (SB# 78576) kirbywilcox@paulhastings.com
JENNIFER A. BLACKSTONE (SB# 226951) jenniferblackstone@paulhastings.com
ZACHARY P. HUTTON (SB# 234737) zachhutton@paulhastings.com
CHRISTINA F. LATTA (SB# 257315) christinalatta@paulhastings.com
PAUL, HASTINGS, JANOFSKY & WALKER LLP
55 Second Street
Twenty-Fourth Floor
San Francisco, CA  94105-3441
Telephone:  (415) 856-7000
Facsimile:  (415) 856-7100

Attorneys for Defendants
ARTHUR J. GALLAGHER SERVICE CO.,
ARTHUR J. GALLAGHER & CO. and
GALLAGHER BASSETT SERVICES, INC.

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SCARLET KESHISHZADEH and LISA ARCHER, as individuals, on behalf of themselves, and on behalf of all persons similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>ARTHUR J. GALLAGHER SERVICE CO., a Delaware corporation,<br><br>Defendant. | CASE NO. 3:09-CV-0168 LAB (RBB)<br><br>(Consolidated with Case No. 3:09-CV-1273 LAB (RBB))<br><br>**DEFENDANTS' REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF OPPOSITION TO PLAINTIFFS' MOTION TO CERTIFY CLASS ACTION**<br><br>Date:    March 15, 2010<br>Time:    11:15 a.m.<br>Judge:   Hon. Larry A. Burns<br>Ctrm:    9, 2nd Floor |
| JAMES CAREY, on behalf of himself and all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>ARTHUR J. GALLAGHER AND COMPANY, a Delaware Corporation, and GALLAGHER BASSETT SERVICES, INC., a Delaware Corporation, inclusive,<br><br>Defendants. | |

LEGAL_US_W # 63926630.1

DEFENDANTS' REQUEST FOR JUDICIAL NOTICE

1    Defendants hereby request that the Court take judicial notice, pursuant to Federal
2    Rule of Evidence Rule 201, of the items set forth below:
3    U.S. Department of Labor Opinion Letter dated November 19, 2002, a true and
4    correct copy of which is attached hereto as Exhibit A; and
5    U.S. Department of Labor Opinion Letter dated August 26, 2005, a true and
6    correct copy of which is attached hereto as Exhibit B.
7    A court may take judicial notice of matters of public record, including records and
8    reports of administrative bodies. *See, e.g., Barron v. Reich*, 13 F.3d 1370, 1377 (9th Cir. 1994)
9    (judicial notice of Department of Labor Field Operations Handbook); *Mack v. South Bay Beer*
10   *Distributors*, 798 F.2d 1279, 1282 (9th Cir. 1986) (judicial notice of records and reports of
11   administrative bodies); *Bell v. Farmers Ins. Exch.*, 115 Cal. App. 4th 715, 735 n. 7 (2004)
12   (judicial notice of Department of Labor opinion letters).

14   DATED: February 16, 2010            Respectfully submitted,
15                                        PAUL, HASTINGS, JANOFSKY & WALKER LLP

17                                        By:  _____*M. Kirby C. Wilcox*_____
18                                                   M. Kirby C. Wilcox

19                                        Attorneys for Defendants,
                                          ARTHUR J. GALLAGHER SERVICE CO.,
                                          ARTHUR J. GALLAGHER & CO. and
20                                        GALLAGHER BASSETT SERVICES, INC.

LEGAL_US_W # 63926630.1            - 1 -
DEFENDANTS' REQUEST FOR JUDICIAL NOTICE

# EXHIBIT A


U.S. Department of Labor
Employment Standards Administration
Wage and Hour Division
Washington, D.C. 20210

November 19, 2002

FLSA2002-11

Dear *Name**,

This is in response to your request for an opinion regarding the exempt status of certain insurance claims adjusters under the Fair Labor Standards Act (FLSA). Your inquiry focused on whether the adjusters qualify for the section 13(a)(1) exemption for employees employed in a bona fide administrative capacity. 29 U.S.C. 213(a)(1). You asked only whether the adjusters' duties are consistent with the administrative exemption, because they are paid in accordance with all of the salary requirements of the regulations. We assume, for purposes of this analysis, that the adjusters in question are compensated on a salary basis in excess of $250 per week exclusive of board, lodging, or other facilities.

You stated that the adjusters in question are primarily involved with the investigation and evaluation of insurance claims. As part of this process, they are responsible for a number of tasks. For example, the adjusters gather the facts by interviewing the insureds, witnesses, and physicians; they also may visit the scene of the event, inspect property damage, and take and review photographs. The adjusters then weigh the factual information and prepare damage estimates. In doing so, they consider a variety of losses such as time lost from work, damages to personal property, the nature and extent of bodily injury, medical bills, and pain and suffering. They also must evaluate whether there is coverage for the claim under the policy. Therefore, the adjusters must be knowledgeable in the areas of various state laws pertaining to insurance and theories of liability and tort law.

After determining coverage, liability, and the total value of the claim, the adjusters establish the level of company reserves for the claim. They then attempt to negotiate settlements with the insured or with the third-party claimant. They have full authority to settle claims within their established authority, and they recommend resolutions to their supervisors for more costly claims, which are generally approved. If their negotiations are unsuccessful, the adjusters advise the company on whether to settle the claim or to pursue litigation. If a claim results in litigation, the adjusters collaborate with counsel and make recommendations in preparation for litigation. In that situation, claims adjusters may be deposed and may testify at the trial. You stated that the adjusters remain primarily responsible for resolving a claim, even when it is in litigation and the policyholder or the third-party claimant is represented by an attorney.

You ask whether insurance claims adjusters with these duties qualify for the exemption for an employee employed in a "bona fide executive, administrative, or professional capacity." 29 U.S.C. § 213(a)(1). The Act gives the Secretary of Labor authority to "define and delimit" those terms in regulations.

The Department's regulations provide that the administrative exemption applies to an employee who is compensated on a salary or fee basis at a rate of not less than $250 per week:

     (1) whose primary duty consists of the "performance of office or non-manual work directly related to management policies or general business operations of his employer or his employer's customers";
     (2) which includes work requiring the exercise of discretion and independent judgment.
29 C.F.R. §§ 541.2(a)(1) and 541.2(e)(2).

### 1. Directly Related to Management Policies or General Business Operations

The interpretive regulations clarify that the phrase "directly related to management policies or general business operations of his employer" describes activities relating to the administrative operations of a business as distinguished from production or, in a retail or service establishment, sales work. In addition to describing the types of activities, the phrase limits the exemption to persons who perform work "of substantial importance to the management or operation of the business of his employer or his employer's customers". 29 C.F.R. § 541.205(a). Our regulations provide that the administrative operations of a business include the work of employees "engaged in 'servicing' a business as, for example, advising the management, planning, negotiating, representing the company, purchasing, promoting sales, and



**U.S. Department of Labor**
Employment Standards Administration
Wage and Hour Division
Washington, D.C. 20210

---

business research and control." 29 C.F.R. § 541.205(b). Significantly, our regulations specifically identify claims agents and adjusters as jobs that ordinarily satisfy the test for exempt administrative work. See 29 C.F.R. § 541.205(c)(5). This regulation is based on the 1940 Stein Report, which followed a series of public hearings relating to the scope of the Section 13(a)(1) exemptions. Thus, Wage and Hour has long recognized that claims adjusters typically perform work that is administrative in nature.

Your description of the claims adjusters' duties indicates that they perform many duties related to servicing the business. They are responsible for planning the processing of a claim from the beginning to the end, whether it is easily and quickly resolved or whether it proceeds to litigation. They represent the company and advise the management throughout the process of gathering the evidence, assessing credibility, reviewing the insurance policy, determining whether there is coverage, evaluating liability, making a decision on whether and how much to pay on the claim, establishing a reserve for the case, making a recommendation on claims above their established authority, and collaborating with the company's counsel if the case results in litigation. They also negotiate on behalf of the company with the claimant, whether the claimant is a policyholder or a third-party claimant. Because these duties involve servicing the insurance company in the same manner that claims adjusters traditionally have done so, as is reflected in the regulatory reference to claims adjusters, we find that their duties are administrative in nature.

The next issue is whether the claims adjusters perform work of substantial importance to the management or operation of the business of the employer. You state that the claims adjusters in question possess full and final authority to settle claims within their established settlement authority. That authority ranges from a minimum of $3,000 to more than $50,000. Every adjuster expends at least $1,000,000 in claims funds every year, and an adjuster with even minimal independent authority may commit as much as $8,000,000 a year in company funds. Moreover, the adjusters may recommend settlements in excess of their established authority, the majority of which are approved by their supervisors. Thus, they are not mere conduits for providing factual information to supervisors on claims in excess of their established authority. Rather, once supervisory approval of a particular settlement amount is provided, we understand that they play the same role in resolving such large claims as they do on those within their established authority.

You also noted that a claims adjuster's decision as to fault or liability affects both the policyholder's and the company's legal rights and obligations. The decisions made by claims adjusters affect policyholders, because their eligibility for continued coverage may be affected and their premium level may be affected. If an adjuster erroneously recommends that coverage should be denied, even on a claim of relatively low value, the insurance company may be liable for significant extra contractual damages for bad faith denial of the claim.

The regulations interpreting whether work is of substantial importance provide that the exemption is not limited to employees who participate in the formulation of management policies or in the operation of the business as a whole. Rather, it covers employees whose work affects policy or whose responsibility it is to execute or carry it out, including those "whose work affects business operations to a substantial degree, even though their assignments are tasks related to the operation of a particular segment of the business." 29 C.F.R. § 541.205(c). The regulations note that the standard for exempt work is met by many workers "employed as advisory specialists and consultants of various kinds, credit managers, safety directors, **claims agents and adjusters**, wage-rate analysts, tax experts, account executives of advertising agencies, customers' brokers in stock exchange firms, promotion men, and many others." 29 C.F.R. § 541.205(c)(5) (emphasis added).

While job titles alone are of little assistance in determining the true importance of an employee to the employer, § 541.201(b), the facts you described support the conclusion that these claims adjusters perform work that is of substantial importance to the company. For example, their determinations regarding whether a particular incident is covered by a policy, and their determinations regarding liability and what the damages are, can result in extremely large financial consequences for the firm. Those steps are essential aspects of every claim processed, and they must be done correctly in order to assure that



**U.S. Department of Labor**
Employment Standards Administration
Wage and Hour Division
Washington, D.C. 20210

the insurance company pays what it is contractually obligated to pay, whether to a policyholder or a third party claimant. The claims adjuster also is responsible for setting the level of reserves for each claim, which is required for compliance with state law. If an audit reveals that adequate reserves have not been established, the state insurance commissioner may sanction the company. These responsibilities clearly are of substantial importance to the management or operation of the insurance company. See Palacio v. Progressive Insurance Co., 2002 U.S. Dist. LEXIS 17021 (C.D. Cal. 2002).

### 2. Exercise of Discretion and Independent Judgment

The final issue is whether an adjuster's primary duty includes work that requires the exercise of discretion and independent judgment. The regulations provide that this involves the "comparison and evaluation of possible courses of conduct," with the authority to "make an independent choice, free from immediate direction or supervision [] with regard to matters of significance." 29 C.F.R. § 541.207(a). Such authority is distinguished from the use of skill in applying standardized or well-established techniques and procedures. § 541.207(c). Moreover, discretion must exist with regard to matters of consequence. § 541.207(d). The employee is not, however, required to have final unlimited authority, with a complete absence of review. Rather, the decisions "may consist of recommendations for action rather than the actual taking of action. The fact that an employee's decision may be subject to review and that upon occasion the decisions are revised or reversed after review does not mean that the employee is not exercising discretion and independent judgment within the meaning of the regulations ..." § 541.207(e)(1).

In prior letters relating to claims adjusters, we have indicated that this component requires a close review of the facts, because it is the criterion that is most likely to cause claims adjusters to fail to qualify for exemption. The facts you presented demonstrate that the employees have complete discretion and independent judgment with regard to all claims within their established authority. They make all relevant decisions regarding coverage and liability, and they negotiate with full authority to attempt to achieve a settlement. Some of the adjusters have quite limited levels of authority, as low as $3,000. However, even those adjusters make recommendations to their supervisors on the appropriate value of much larger claims, which are frequently accepted. Moreover, after the supervisor approves a particular settlement value on a larger claim, the adjusters proceed with the same independence as they do on claims within their authority and determine the most appropriate method for resolving the claim within that approved amount. Even on such large claims, if negotiations fail, the adjusters continue to be responsible for handling the claim, and they work with counsel to represent the company in any litigation that ensues.

We believe that these facts demonstrate that the adjusters exercise a great deal of discretion in deciding how to handle all types of claims. See Palacio, 2002 U.S. Dist. LEXIS 17021. They are not merely pursuing a standardized format for resolving claims, but rather are using their own judgment about what the facts show, who is liable, what a claim is worth, and how to handle the negotiations with either a policyholder or a third-party claimant in order to achieve a successful resolution. Therefore, based upon all of the facts you presented, we conclude that these claims adjusters satisfy the standard for exemption as bona fide administrative employees.

This opinion is based exclusively on the facts and circumstances described in your request and is given on the basis of your representation, explicit or implied, that you have provided a full and fair description of all the facts and circumstances that would be pertinent to our consideration of the question presented. Existence of any other factual or historical background not contained in your request might require a different conclusion than the one expressed herein. You have also represented that this opinion is not sought on behalf of a client or firm which is under investigation by the Wage and Hour Division, or which is in litigation with respect to, or subject to the terms of any agreement or order applying, or requiring compliance with, the provisions of the FLSA.

We trust that this information is responsive to your inquiry.

Sincerely,


U.S. Department of Labor
Employment Standards Administration
Wage and Hour Division
Washington, D.C. 20210

Tammy D. McCutchen
Administrator

Note: * The actual name(s) was removed to preserve privacy.

# EXHIBIT B


U.S. Department of Labor
Employment Standards Administration
Wage and Hour Division
Washington, D.C. 20210

**August 26, 2005**                                                                                      **FLSA2005-25**

Dear **Name***,

This is in response to your request for an opinion concerning whether insurance claims adjusters employed by your client qualify for the administrative exemption under section 13(a)(1) of the Fair Labor Standards Act (FLSA). You request a reply based on an analysis of the revisions to 29 C.F.R. Part 541, which were published as a final rule in the Federal Register on April 23, 2004 (69 FR 22122), with a scheduled effective date of August 23, 2004. The new Part 541 regulations apply prospectively, beginning August 23, 2004. Our response is applicable under both the old and revised version of the regulations, as there were no substantive changes in the primary duty test requirements for the administrative exemption.

You state that the claims adjusters in question are employed by your client, which acts as a third party administrator. The third party administrator at issue exists to sell claims adjusting and other services to insurance companies, insurance brokers and/or self-insured companies. Your client charges a fee to provide the claims adjusting services, typically based upon the number and complexity of claims handled. A self-insured company may also contract directly with your client to provide claims adjusting services for their self-insured plan.

Your client employs three levels of insurance claims adjusters: (1) Claims Specialist I; (2) Claims Specialist II; and (3) Senior Claims Specialist. They are paid on a salary basis at a rate of at least $455 per week. These Claims Specialists provide claims adjusting services to customers of your client in two areas: workers' compensation and general liability. In your letter you describe the duties and responsibilities of the Claims Specialist I and II and Senior Claims Specialist. Each position is discussed next.

Claims Specialist I
Claims Specialist I's perform non-manual work in an office setting. On the general liability side, Claims Specialist I's primarily handle bodily injury claims stemming from non-employee injuries that occur on the premises of commercial enterprises, and also from product liability claims. On the workers' compensation side, Claims Specialist I's handle employee injury claims.

In handling workers' compensation claims, typically coverage is a foregone conclusion. The Claims Specialist I investigates the facts relating to the claim. This normally involves questioning the claimant, the claimant's employer and the claimant's treating physician. Then, in consultation with the supervisor, the Claims Specialist I sets an initial reserve amount by estimating the ultimate value of the claim. In arriving at this initial reserve amount, the Claims Specialist I relies on his experience and knowledge in adjusting claims and on advice from his supervisor.

The Claims Specialist I maintains and documents the claim file; evaluates the facts and the law to determine compensability and the amounts owed; makes workers' compensation disability determinations; determines whether vocational rehabilitation services are required; determines whether an injured employee can return to work and what, if any, accommodations need to be made at the workplace to facilitate the return; monitors the ongoing need for an accommodation, such as light duty, after the injured worker has returned to work; evaluates the claim for possible subrogation opportunities; evaluates the claim for possible fraud; decides whether additional investigation is needed and attempts to resolve the claim through settlement. Most of these tasks are performed in consultation with and under the supervision of the Claims Specialist I's supervisor.

Each file that is handled by a Claims Specialist I is reviewed by his supervisor periodically for completeness and to make sure that the Claims Specialist I is handling the file appropriately. In addition, while it is within the discretion and judgment of the Claims Specialist I to determine what, if any, additional


**U.S. Department of Labor**
Employment Standards Administration
Wage and Hour Division
Washington, D.C. 20210

investigative actions need to be taken, that discretion and judgment is typically exercised after discussion with the Claims Specialist I's supervisor.

If a more-in-depth investigation is deemed necessary, the Claims Specialist I gathers facts such as the location of injury, time of loss, and the injured worker's previous history of filing workers' compensation claims. The Claims Specialist I, among other steps, also interviews witnesses, determines whether to pursue surveillance of claimant, and when necessary, disputes the treating physician's diagnosis and prognosis by requesting a medical-legal evaluation of the injured worker. Many of these tasks are discussed with the Claims Specialist I's supervisor.

The Claims Specialist I also assists in administering benefits. He communicates with doctors about the injured employee's continued need for treatment, reviews medical and lab reports, decides whether to extend medical payment coverage and makes decisions on approving or challenging medical bills, when appropriate. Throughout this process, the Claims Specialist I consults with his supervisor for advice and guidance.

The Claims Specialist I is responsible for negotiating a full resolution of the claim. The authority levels by which the Claims Specialist I can unilaterally settle are generally $5,000 or less. However, before a Claims Specialist I can settle a claim, he must frequently seek approval from the customer whose account the Claims Specialist I is servicing. The Claims Specialist I also consults frequently with his supervisor to discuss an appropriate amount for which to settle the claim. Once settlement authority is approved, the Claims Specialist I deals directly with either the claimant or the claimant's representative in settling the claim.

The Claims Specialist I on the general liability side performs similar work and has similar responsibility and types of supervision. The two positions differ in that the Claims Specialist I handling liability claims has more leeway in settlement negotiation. This is because state laws sometimes dictate the value of a settlement of workers' compensation claims while no such legal strictures apply to the settlement of general liability claims. Also, Claims Specialist I's on the general liability side spend less time investigating and dealing with vocational rehabilitation and disability issues. Furthermore, Claims Specialists I's who work on the general liability side spend much more time on coverage, subrogation and contribution issues.

Claims Specialist I's on both the workers' compensation and general liability areas tend not to be assigned complex and difficult claims, such as those that could involve litigation or arbitration. In a discussion with a member of the Wage and Hour Division staff on November 4, 2004, you stated that new employees are hired as Claims Specialist I's and after six months to a year of satisfactory employment, Claims Specialist I's are transitioned to the Claims Specialist II position.

Claims Specialist II
The Claims Specialist II job duties are the same as the Claims Specialist I job duties. However, Claims Specialist II employees are not as closely supervised as Claims Specialist I's. Where every claim that a Claims Specialist I handles is subject to review by his supervisor, supervisors only spot-check the work of Claims Specialist II's. Also, while a Claims Specialist I will typically discuss his plans for handling each claim with his supervisor both at the outset and as the claim proceeds, a Claims Specialist II will only have such a discussion with his supervisor when the Claims Specialist II deems it necessary.

In addition, the cases handled by Claims Specialist II's tend to be more complex. Compared to their junior counterparts, Claims Specialist II's are more likely to evaluate independent medical examinations and independent investigations of accident scenes. They are more likely to hire and interact with vocational rehabilitation specialists and nursing services to assist claimants in their return to work or in dealing with their ongoing disabilities. Claims Specialist II's on the general liability side also handle more severe and complex product liability claims, which require a higher level of judgment and knowledge.



**U.S. Department of Labor**
Employment Standards Administration
Wage and Hour Division
Washington, D.C. 20210

Claims Specialist II's handle all claims that are in arbitration or court litigation. Specifically, Claims Specialist II's develop strategies with the attorney assigned to the case as to how the case is to be defended. Claims Specialist II's approve litigation strategy, participate in and approve the hiring of experts to testify and work with counsel for the insured in presenting expert testimony. Along with counsel, Claims Specialist II's act as lead negotiators in any settlement discussions.

Claims Specialist II's spend a significant amount of their time directly "servicing" the customer. Claims Specialist II's meet frequently with the customers of your clients to whom they are providing claims services to discuss trends in their accounts and additional safety precautions that can be undertaken to protect them against further claims, including overall strategies to reduce the costs of claims. Approximately 20% of the Claims Specialist II's time is spent in these discussions that take place on a monthly basis.

Senior Claims Specialist
Senior Claims Specialists perform the same duties as Claims Specialist II's with no more than the same level of supervision. The only difference between the two positions is that the Senior Claims Specialists typically have more experience in handling claims and Senior Claims Specialists tend to handle the most complicated and difficult claims. Senior Claims Specialists also spend at least 20% of their work time preparing for or engaging in client servicing matters as described above.

Analysis
Under the revised regulations at 29 C.F.R. 541.200(a), "the term 'employee employed in a bona fide administrative capacity' in section 13(a)(1) of the Act shall mean any employee:
1) Compensated on a salary or fee basis at a rate of not less than $455 per week ..., exclusive of board, lodging or other facilities;
2) Whose primary duty is the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers; and
3) Whose primary duty includes the exercise of discretion and independent judgment with respect to matters of significance."

The administrative exemption thus has requirements pertaining to both the "type of work performed" and "the level of importance or consequence of the work performed." See 69 FR at 22139. With regard to the type of work performed, the preamble explains that the "exemption is intended to be limited...to employees whose work involves servicing the business itself" and thus inapplicable to employees whose work relates to the "production" operations of the business. 69 FR at 22141. Although the production versus staff dichotomy is illustrative, rather than dispositive, it is a useful tool in appropriate cases to identify employees who are excluded from the administrative exemption.

We discuss below the second criteria of the administrative exemption, which is then followed by an analysis of whether the primary duty of the Claims Specialist I's and II's and Senior Claims Specialists is the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers.

Directly Related to the Management or General Business Operations
"The phrase 'directly related to management or general business operations' refers to the type of work performed by the employee. To meet this requirement, an employee must perform work directly related to assisting with the running or servicing of the business, as distinguished, for example, from working on a manufacturing production line or selling a product in a retail or service establishment." 29 C.F.R. 541.201(a).

"Work directly related to management or general business operations includes, but is not limited to, work in functional areas such as tax; finance; accounting; budgeting; auditing; insurance; quality control; purchasing; procurement; advertising; marketing; research; safety and health; personnel management; human resources; employee benefits; labor relations; public relations; government relations; computer


**U.S. Department of Labor**
Employment Standards Administration
Wage and Hour Division
Washington, D.C. 20210

network, internet and database administration; legal and regulatory compliance; and similar activities." 29 C.F.R. 541.201(b).

"An employee may qualify for the administrative exemption if the employee's primary duty is the performance of work directly related to the management or general business operations of the employer's customers. Thus, for example, employees acting as advisers or consultants to their employer's clients or customers (as tax experts or financial consultants, for example) may be exempt." 29 C.F.R. 541.201(c).

"The term 'primary duty' means the principal, main, major or most important duty that the employee performs. Determination of an employee's primary duty must be based on all the facts in a particular case, with the major emphasis on the character of the employee's job as a whole." 29 C.F.R. 541.700(a).

As you represent, in performing work on behalf of a contracting insurance company, the Claims Specialist I's and II's and Senior Claims Specialists service the insurance policies sold by your client's customers. Indeed, for carriers with whom your client contracts, the Claims Specialist I's and II's and Senior Claims Specialists provide claims adjusting services which are necessary to service the insurance policy sold by the insurance company. For your client's other customers, such as insurance brokers, the Claims Specialist I's and II's and Senior Claims Specialists also provide claims adjusting services for the final product that the broker in turn sells to his customer. For the self-insured companies, Claims Specialist I's and II's and Senior Claims Specialists adjust claims brought by employees of the self-insured entity in their every day business activities. In addition, Claims Specialist II's and Senior Claims Specialists frequently discuss certain trends in the customer's account, and provide advice regarding additional safety precautions that the clients could take to reduce the cost of claims.

Thus, the primary duty of the Claims Specialist I's and II's and Senior Claims Specialists in either the workers' compensation or general liability side is servicing the employer's customer's business through the performance of claims adjusting duties, which involve work directly related to the management or general business operations in such functional areas as insurance, safety and health, personnel management, human resources, legal and regulatory compliance. See 29 C.F.R. 541.201(b).

Based on an analysis of the information provided, we believe that the Claims Specialists I and II and Senior Claims Specialist positions meet the second criteria of the administrative exemption test in that their primary duty involves the performance of office or non-manual work directly related to the management or general business of the employer's customers. See Opinion Letters dated November 19, 2002 and August 6, 2002 (copies enclosed).

We proceed with a discussion of the third criteria of the administrative exemption, which is then followed by an analysis of whether the primary duty of the Claims Specialist I's and II's and Senior Claims Specialists includes the exercise of discretion and independent judgment with respect to matters of significance.

Discretion and Independent Judgment
Section 541.202(a) states that in order "[t]o qualify for the administrative exemption, an employee's primary duty must include the exercise of discretion and independent judgment with respect to matters of significance. In general, the exercise of discretion and independent judgment involves the comparison and the evaluation of possible courses of conduct, and acting or making a decision after the various possibilities have been considered. The term 'matters of significance' refers to the level of importance or consequence of the work performed."

As indicated in section 541.202(b):

> "The phrase 'discretion and independent judgment' must be applied in the light of all the facts involved in the particular employment situation in which the question arises. Factors to consider when determining whether an employee exercises discretion and independent judgment with respect to matters of significance include, but are not limited



**U.S. Department of Labor**
Employment Standards Administration
Wage and Hour Division
Washington, D.C. 20210

to: whether the employee has authority to formulate, affect, interpret, or implement management policies or operating practices; whether the employee carries out major assignments in conducting the operations of the business; whether the employee performs work that affects business operations to a substantial degree, even if the employee's assignments are related to operation of a particular segment of the business; whether the employee has authority to commit the employer in matters that have significant financial impact; whether the employee has authority to waive or deviate from established policies and procedures without prior approval; whether the employee has authority to negotiate and bind the company on significant matters; whether the employee provides consultation or expert advice to management; whether the employee is involved in planning long- or short-term business objectives; whether the employee investigates and resolves matters of significance on behalf of management; and whether the employee represents the company in handling complaints, arbitrating disputes or resolving grievances."

Section 541.202(c) describes an employee's exercise of discretion and independent judgment as including the authority to make an independent choice that is free from immediate direction or supervision. However, this section does not imply that an employee does not exercise discretion and independent judgment if the employee's decisions or recommendations are reviewed at a higher level. "The fact that an employee's decision may be subject to review and that upon occasion the decisions are revised or reversed after review does not mean that the employee is not exercising discretion and independent judgment." Id. Section 541.202(e) further clarifies that the "exercise of discretion and independent judgment must be more than the use of skill in applying well-established techniques, procedures or specific standards described in manuals or other sources."

Finally, section 541.203(a) provides that insurance claims adjusters "generally meet the duties requirements for the administrative exemption, whether they work for an insurance company or other type of company, if their duties include activities such as interviewing insureds, witnesses and physicians; inspecting property damage; reviewing factual information to prepare damage estimates; evaluating and making recommendations regarding coverage of claims; determining liability and total value of a claim; negotiating settlements; and making recommendations regarding litigation." As noted in the preamble to the revised regulations at 69 FR 22144: "...there must be a case-by-case assessment to determine whether the employee's duties meet the requirement of the exemption."

Claims Specialist I
As described in the prior paragraphs, Claims Specialist I's working in either the workers' compensation or general liability side perform several of the duties and responsibilities of an exempt claims adjuster characterized in section 541.203(a). For example, the Claims Specialist I's interview the claimant, the claimant's employer, and the treating physician. Claims Specialist I's review factual information to set and adjust the initial reserve amount. Also, Claims Specialist I's decide whether additional investigation is needed and attempts to resolve claims through settlement. We note, however, that Claims Specialist I's in both the workers' compensation and general liability areas perform their duties under close supervision by their managers. As mentioned above, a Claims Specialist I must consult with his supervisor in setting the initial reserve amount. Most of the tasks performed after the setting of the initial reserve amount are done in consultation with and under the supervision of the Claims Specialist I's supervisor. In addition, each file handled by a Claims Specialist I is reviewed periodically for completeness in order to ensure that the files are handled appropriately.

If a Claims Specialist I feels that a claim needs additional investigation, the Claims Specialist I must discuss the investigation with his supervisor and seek approval. If such actions are deemed necessary, any steps taken are further discussed with the supervisor. In performing the duties of monitoring the claim and assisting in administering benefits, a Claims Specialist I consults with his supervisor for advice and guidance. Furthermore, in settling a claim, a Claims Specialist I frequently consults with his supervisor to discuss the appropriate amount to settle a claim.



**U.S. Department of Labor**
Employment Standards Administration
Wage and Hour Division
Washington, D.C. 20210

Based on a review of the information provided, we believe that the Claims Specialist I employed in either the workers' compensation or general liability side is so closely supervised by the Claims Specialist I's manager in the performance of his duties that the Claims Specialist I does not have the authority to make independent choices that are free from immediate direction or supervision. See 29 C.F.R. 541.202(c). Thus, the Claims Specialist I's fail to meet the third criteria of the administrative exemption in that the work of Claims Specialist I's does not meet the requisite degree of discretion and independent judgment with regard to matters of significance contemplated under the revised regulations. Therefore, it is our opinion that Claims Specialist I's in either the workers' compensation or general liability side cannot qualify for the administrative exemption under the revised regulations at 29 C.F.R. 541.200. Hence, Claims Specialist I's are covered by the minimum wage and overtime provisions of the FLSA. See Opinion Letter dated January 7, 2005 (copy enclosed); Robinson-Smith v. GEICO, 323 F.Supp.2d 12 (D.D.C. 2004) (automobile damage claims adjusters not exempt because they do not exercise sufficient discretion and independent judgment); In re Farmers Insurance Exchange, 336 F.Supp.2d 1077 (D.Ore. 2004) (automobile and certain property damage adjusters lack adequate discretion and independent judgment, while personal injury and death claims adjusters are exempt).

Claims Specialist II and Senior Claims Specialist
As described in the prior paragraphs, Claims Specialist II's and Senior Claims Specialists working in either the workers' compensation or general liability side perform the activities of an exempt claims adjuster characterized in section 541.203(a). For example, Claims Specialist II's and Senior Claims Specialists interview the claimant, the claimant's employer and the claimant's treating physician; set and adjust the reserve amount; evaluate the facts and the law to determine compensability and the amounts owed; make workers' compensation disability determinations; determine whether vocational rehabilitation services are needed, and also whether an injured employee can return to work and what, if any, accommodations need to be made at the workplace to facilitate the employee's return; identify and pursue subrogation, contribution, indemnification or other opportunities to force third parties to bear part of the settlement burden; evaluate the claim for possible subrogation opportunities and for possible fraud; negotiate settlements; and make recommendations regarding litigation.

In your letter, you state that the claims adjusting services that the Claims Specialist I and II and Senior Claims Specialist provide are important to all of the customers your client serves, which we take to mean, for discussion purposes, as satisfying the requirement that the Claims Specialist II's and Senior Claims Specialists' exercise of discretion and independent judgment involves matters that are significant to your client's customers. See 29 C.F.R. 541.202(a) and 541.202(f) and Opinion Letter dated November 19, 2002.

The discussion necessarily turns to whether a Claims Specialist II and Senior Claims Specialist, in the performance of their claims adjusting duties, have "authority to make an independent choice, free from immediate direction or supervision," and also whether a Claims Specialist II and Senior Claims Specialist's "exercise of discretion and independent judgment" in the performance of their work involves "more than the use of skill in applying well-established techniques, procedures or specific standards described in manuals or other sources." Sections 541.202(c) and 541.202(e).

With regard to Claims Specialist II's and Senior Claims Specialists working in either the workers' compensation or general liability side, we note that in handling each claim, Claims Specialist II's and Senior Claims Specialists are not as closely supervised compared with their junior counterparts. Supervisors only spot-check their work, and any discussions with supervisors dealing with casework are at the Claims Specialist II's and Senior Claims Specialists' discretion. Claims Specialist II's and Senior Claims Specialists perform their work more independently than Claims Specialist I's, typically without involvement of their supervisor on each claim. Claims Specialist II's and Senior Claims Specialists also handle casework that is in arbitration or litigation. Claims Specialist II's and Senior Claims Specialists determine the strategy and tactics to be used during litigation and in the settlement of litigated claims and also act as lead negotiators in settlement discussions. In addition, Claims Specialist II's and Senior Claims Specialists meet frequently with the employer's customers to whom they are providing claims


**U.S. Department of Labor**
Employment Standards Administration
Wage and Hour Division
Washington, D.C. 20210

services to discuss trends in their account and additional safety precautions that can be undertaken to protect them against further claims and overall strategies to reduce the costs of claims.

After reviewing the information provided, we believe that Claims Specialist II's and Senior Claims Specialists in performing their work have "authority to make an independent choice, free from immediate direction or supervision." 29 C.F.R. 541.202(c).

We also believe that performing the duties and responsibilities of the Claims Specialist II's and Senior Claims Specialists require "more than the use of skill in applying well-established techniques, procedures or specific standards described in manuals or other sources." 29 C.F.R. 541.202(e). For example, Claims Specialist II's and Senior Claims Specialists, compared to their junior counterparts, handle more complex cases. Claims Specialist II's and Senior Claims Specialists are more likely to evaluate independent medical examinations and independent investigations of accident scenes. Claims Specialist II's and Senior Claims Specialists are also more likely to hire and interact with vocational rehabilitation specialists and nursing services to assist claimants in their return to work or in dealing with ongoing disabilities. Claims Specialists II's and Senior Claims Specialists on the general liability side also handle more severe and complex product liability claims, which require a higher level of judgment and knowledge. Furthermore, as stated earlier, Claims Specialist II's and Senior Claims Specialists handle claims that are in arbitration or court litigation. Specifically, Claims Specialist II's and Senior Claims Specialists approve litigation strategy, participate in and approve the hiring of experts to testify and work with counsel for the insured in presenting expert testimony. Also, along with counsel, Claims Specialist II's and Senior Claims Specialists act as lead negotiators in any settlement discussions.

We conclude that these facts demonstrate that Claims Specialist II's and Senior Claims Specialists exercise a great deal of discretion in deciding how to handle all types of claims. They are not merely using a standardized format for resolving claims, but rather are using their own judgment about what the facts show, who is liable, what a claim is worth, and how to handle the negotiations with the claimant or the claimant's representative in order to achieve a successful resolution. Hence, Claims Specialist II's and Senior Claims Specialists employed in either the workers' compensation or general liability side exercise the requisite discretion and independent judgment in matters of significance in the performance of their work as contemplated in the revised regulations. Claims Specialist II's and Senior Claims Specialists meet all three criteria of the administrative exemption. Therefore, based on the information provided, it is our opinion that Claims Specialist II's and Senior Claims Specialists qualify for the administrative exemption under section 13(a)(1) of the FLSA and its revised implementing regulations at 29 C.F.R. 541.200.

This opinion is based exclusively on the facts and circumstances described in your request and is given on the basis of your representation, express or implied, that you have provided a full and fair description of all the facts and circumstances that would be pertinent to our consideration of the question presented. Existence of any other factual or historical background not contained in your request might require a different conclusion than the one expressed herein. You have represented that this opinion is not sought by a party to a pending private litigation concerning the issue addressed herein. You have also represented that this opinion is not sought in connection with an investigation or litigation between a client or firm and the Wage and Hour Division or the Department of Labor. This opinion letter is issued as an official ruling of the Wage and Hour Division for purposes of the Portal-to-Portal Act, 29 U.S.C. 259. See 29 C.F.R. 790.17(d), 790.19; Hultgren v. County of Lancaster, Nebraska, 913 F.2d 498, 507 (8th Cir. 1990).

We trust that the above is responsive to your inquiry.

Sincerely,


Alfred B. Robinson, Jr.
Deputy Administrator


U.S. Department of Labor
Employment Standards Administration
Wage and Hour Division
Washington, D.C. 20210

Enclosures:  Opinion Letters dated January 7, 2005;
November 19, 2002;
August 6, 2002

*Note: The actual name(s) was removed to preserve privacy in accordance with 5 U.S.C. 552 (b)(7).