1

2

3

4

5

6

7

8              **UNITED STATES DISTRICT COURT**

9            **SOUTHERN DISTRICT OF CALIFORNIA**

10

11   SCARLET KESHISHZADEH, an            CASE NO. 09cv0168-LAB (RBB)
     individual; on behalf of herself, and on
12   behalf of all persons similarly situated,   (Consolidated w/ 09cv1273-LAB (RBB))

13                          Plaintiffs,   **ORDER GRANTING MOTION FOR**
                                          **CLASS CERTIFICATION**
         vs.
14                                        **[Doc. Nos. 64, 82, and 88.]**

15
     ARTHUR J. GALLAGHER SERVICE
16   CO., a Delaware Corporation,

17                          Defendants.
     _____
18
     JAMES CAREY, on behalf of himself and
19   all others similarly situated,

20                          Plaintiffs,

21       vs.

22   ARTHUR J. GALLAGHER AND
     COMPANY, a Delaware Corporation, and
23   GALLAGHER BASSETT SERVICES,
     INC., a Delaware Corporation, inclusive,
24
                             Defendants.
25

26

27

28

1    **I.    Introduction**

2         This is a putative wage and hour class action.  Plaintiffs are former and current

3    employees of Defendant Gallagher Bassett Services, Inc. (GBS) who adjust workers'

4    compensation insurance claims and are referred to as "claims representatives" and "senior

5    claims representatives."  GBS is a third-party administrator of insurance policies, so the

6    claims Plaintiffs adjust are claims that will be paid by GBS's clients, not GBS.  As GBS

7    explains, its clients are "insurance carriers that sell and write workers' compensation

8    insurance policies, and employers that self-insure workers' compensation benefits for their

9    employees."  (Opp'n Br. at 2.)

10        Plaintiffs' grievance is that they routinely worked overtime but never received overtime

11   pay, in violation of the California Labor Code and California Business and Professions Code.

12   *See* Cal. Labor Code § 510.  GBS doesn't dispute that Plaintiffs were never paid overtime.

13   Its position is that they are "administrative employees" who, as such, are exempt from the

14   Labor Code's overtime requirements.   *See* Cal. Labor Code § 515.  What this case comes

15   down to is whether the administrative employee classification fits the work that Plaintiffs

16   actually do, because that, not their job title or job description, is what ultimately matters.

17   *Ramirez v. Yosemite Water Co., Inc.*, 20 Cal.4th 785, 802 (1999).  Thus, Plaintiffs portray

18   the job of a claims representative and senior claims representative as cog-like, and GBS

19   portrays it as independent and analytical.

20        But the merits of classifying Plaintiffs as administrative employees are not before the

21   Court right now.  First, the Court must decide whether this case can proceed as a class

22   action.  Plaintiffs filed a motion for class certification on January 13, 2010.  It has been

23   heavily briefed, and on March 29, 2010 the Court heard oral argument.  The parties'

24   extensive pleadings were helpful to the Court, but to a point of diminishing returns.  Oral

25   argument gave both parties the opportunity to emerge from the thicket of paper in the docket

26   and explain, in straightforward terms, why this case should or shouldn't be certified as a

27   class action.

28   //

1   **II.    Legal Background - California Labor Code**

2          California law requires that "[a]ny work in excess of eight hours in one workday and

3   any work in excess of 40 hours in any one workweek . . . shall be compensated at the rate

4   of no less than one and one-half times the regular rate of pay."  Cal. Labor Code § 510.

5   However, the Labor Code gives the Industrial Welfare Commission the authority to

6               establish exemptions from the requirement that an overtime rate
                of compensation be paid pursuant to Sections 510 and 511 for
7               executive, administrative, and professional employees, provided
                that the employee is primarily engaged in the duties that meet
8               the test of the exemption, customarily and regularly exercises
                discretion and independent judgment in performing those duties,
9               and earns a monthly salary equivalent to no less than two times
                the state minimum wage for full-time employment.  Cal. Labor
10              Code § 515(a).

11  The Commission exercised that authority with Wage Order 4-2001, which lays out a multi-

12  part test to determine whether the administrative employee exemption applies to a particular

13  worker or class of workers.  *See* 8 CCR § 11040(A)(2).[1]  An administrative employee is

14  someone

15              (a)    Whose   duties   and   responsibilities   involve the
                       performance of office or non-manual work directly related
16                     to management policies or general business operations
                       of his/her employer or his employer's customers; and
17
                (b)    Who customarily and regularly exercises discretion and
18                     independent judgment; and

19              (c)    Who regularly and directly assists a proprietor, or an
                       employee involved in  a  bona  fide  executive  or
20                     administrative capacity; or

21              (d)    Who performs under only general supervision work along
                       specialized or technical lines requiring special training,
22                     experience or knowledge; or

23              (e)    Who executes under only general supervision special
                       assignments and tasks; and
24
                (f)    Who is primarily engaged in duties that meet the test of
25                     the exemption; and

26              (g)    Such employee must also earn a monthly salary

27  ────────────────────

28          [1] The executive and professional exemptions aren't implicated in this case.  If
    Plaintiffs are exempt from overtime requirements, they're exempt as administrative
    employees of GBS.

equivalent to no less than two times the state minimum wage for full-time employment.  8 CCR § 11040(A)(2).

Subsection (f) is important.  To be "primarily engaged in duties that meet the test of the exemption," more than one-half of the employee's time at work must be devoted to exempt activities.  Cal. Labor Code § 515(e).  It is the nature of an employee's work that matters, not his or her job title, job description, or volume of work.  *Nordquist v. McGraw-Hill Broad Co.*, 32 Cal. App. 4th 555, 568 (1995).

Stripped down, the law here is that the more menial an employee's job is, the less likely he or she is to qualify as an administrative employee.  The consequence of this is that Plaintiffs, to argue their case, have no choice but to almost denigrate the work that they do.  For example, they describe their duties as "routine" and emphasize that their job only requires a high school diploma.  (Compl. ¶ 5.)  They "fill out paper work, make telephone calls to physicians and clients, process treatment authorizations, sort mail, and process claims acceptance and denials as specified by AJG, according to pre-established guidelines and procedures."  (Compl. ¶ 14.)  Their job "does not involve specialized or technical work that requires special training, experience or knowledge."  (Compl. ¶ 14.)

## III.   Legal Background - Class Certification

Class actions are governed by Rule 23 of the Federal Rules of Civil Procedure.  Rules 23(a) and (b) speak to class certification specifically.  Rule 23(a) provides that a case may proceed as a class action only if "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a). But that's not all.  A class action may be maintained only if Rule 23(a) is satisfied and one of the following requirements of Rule 23(b) is also satisfied:

> (1)   prosecuting separate actions by or against individual class members would create a risk of:
>
>    (A)   inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or

09cv0168

(B)     adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests;

(2)    the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole; or

(3)    the court finds that questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.  Fed. R. Civ. P. 23(b).

Plaintiffs maintain that their action satisfies the prerequisites of Rule 23(a) (*see* Compl. ¶ 30), as it must, as well as *each* requirement of Rule 23(b), which is obviously unnecessary. (*See* Compl. ¶¶ 31–32.)  However, in Plaintiffs' memo in support of class certification they clarify that they are seeking class certification pursuant to requirement (3) of Rule 23(b):

Once plaintiffs satisfy Rule 23(a)'s prerequisites, the court must also find that the action satisfies one of the three conditions of subdivision (b) of Rule 23. Here, Plaintiffs rely on Rule 23(b)(3), which requires that the question of law or fact common to the class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for a fair and efficient adjudication of the controversy.  (Class Cert. Mem. at 20.)

GBS doesn't appear to dispute that Plaintiffs' action satisfies Rule 23(a); the dispute, instead, centers on whether the action satisfies the predominance and superiority requirements of Rule 23(b).  (*See* Opp'n Br. at 17.)

Plaintiffs bear the burden of showing that these requirements are met and that class certification is warranted.  *Zinzer v. Accufix*, 253 F.3d 1180, 1186 (9th Cir. 2001).  This burden, however, is slight; "a court need only be able to make a reasonable judgment that Rule 23 requirements are satisfied."  *Marlo v. United Parcel Serv.*, 251 F.R.D. 476, 487 (C.D. Cal. 2008).  Ultimately, it is up to the discretion of the Court whether to certify a class. *United Steel , Paper & Forestry, Rubber, Mfg. Energy, Allied Industrial & Service Workers Int'l Union, AFL-CIO, CLC v. ConocoPhillips* Co., 593 F.3d 802, 807 (9th Cir. 2010).

1    The underlying merits of a case shouldn't cloud the class certification analysis.  The

2    question is only whether the requirements of Rule 23 are met.  *Eisen v. Carlisle & Jacquelin*,

3    417 U.S. 156, 177–78 (1974).  "[N]either the possibility that a plaintiff will be unable to prove

4    his allegations, nor the possibility that the later course of the suit might unforeseeably prove

5    the original decision to certify the class wrong, is a basis for declining to certify a class which

6    apparently satisfies the Rule."  *Blackie v. Barrack*, 524 F.2d 891, 901 (9th Cir. 1975).

7    Finally, although it is no license to approach the class certification question with

8    insouciance, Rule 23 further provides that "[a]n order that grants or denies class certification

9    may be altered or amended before final judgment."  Fed. R. Civ. P. 23(c)(1)(C).  The Court's

10   decision whether to certify Plaintiffs' case as a class action is therefore "inherently tentative."

11   *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 469 n.11 (1978).  "Even after a certification

12   order is entered, the judge remains free to modify it in the light of subsequent developments

13   in the litigation."  *Gen. Telephone Co. of Southwest v. Falcon*, 457 U.S. 147, 160 (1982); *see*

14   *also United Steel*, 593 F.3d at 809) (district court "retains the flexibility to address problems

15   with a certified class as they arise, including the ability to decertify").

16   **IV.    Summary of the Evidence**

17   The parties have submitted substantial testimonial evidence in support of their

18   respective positions.  First, seven depositions were taken – four of witnesses produced by

19   GBS to testify on its behalf and one of each of the three named Plaintiffs.[2]  The witnesses

20   produced by GBS are Jeff Ponta, Christopher Neigel, Cynthia Martinsson, and Herman

21   Ramirez.  (*See* Bhomik Decl., Doc. No. 64-2, Exs. 4, 6, 7, and 8.)  The named Plaintiffs are

22   Scarlet Keshishzadeh, Lisa Archer, and James Carey.  (*See id.*, Exs. 10, 11, 12.)  Both

23   parties rely on the deposition testimony of these individuals.

24   Plaintiffs have also submitted the declarations of five members of the putative class

25   who either are or were claims representatives with GBS, along with one declaration of a

26   claims supervisor.  The claims representatives are Leslie Johnson, Felicia Casey, Colleen

27   _____

28   [2] Plaintiffs say "Defendants produced five (5) witnesses who testified on behalf of the corporation," but it appears to the Court that only four depositions are included in the record. (Class. Cert. Memo at 6.)

1  Hartsock, Colleen Rose, and Ofelia Ulloa.  (Bhomik Decl., Doc. No. 64-2, Exs. 9, 13, 14, 15,

2  and 16.)  The claims supervisor is Kevin Roberts.  (*Id*. at Ex. 27.)

3       Defendants, for their part, have submitted the declarations of twenty-two claims

4  representatives and senior claims representatives.  (Hutton Decl., Doc. No. 79, Ex. A.)  In

5  addition, Defendants submitted the declarations of four GBS supervisors — Martinsson,

6  Sarah Hom, Kevin Fiola, and Cathy Lara — the purpose of which is to suggest that Plaintiffs'

7  declarants Casey, Rose, Ulloa, and Hartsock were underperformers on the job.  (*See id.*,

8  Exs. 72, 73, 75, and 76.)  In fact, Casey and Rose were terminated by GBS, Hartsock was

9  formally reprimanded and resigned, and Ulloa was formally reprimanded.

10      The parties have also submitted expert testimony.  Plaintiffs' experts are Joseph

11  Lavitt, an adjunct professor and lecturer at Boalt who teaches insurance law, and Miles

12  Locker, formerly a high-ranking labor lawyer with the State of California.  (Bhowmik Decl.,

13  Doc. Nos. 64-3, 63-4.)  Lavitt's testimony comes in the form of a nearly 30-page report that

14  concludes "Gallagher is in the main indifferent to [Plaintiffs'] qualities of good judgment, and

15  uninterested in any effort to distinguish among them on any basis other than their compliant

16  adherence to crushing regulations and production schedules."  (Lavitt Report at 27.)

17  Translation: Plaintiffs are not administrative employees.  Locker testifies by way of a

18  declaration, and he concludes "claims representative and senior claims representatives were

19  'not exercising discretion and independent judgment' within the meaning of the regulations.

20  (Locker Decl. at 13.)  GBS filed a motion to strike both Lavitt's report and Locker's

21  declaration on the ground that they are inadmissible under Federal Rule of Evidence 702.

22  (Doc. No. 82.)

23      GBS's expert testimony comes from Deborah Jay, the head of a reputable research

24  firm specializing in marketing and public opinion surveys.  (Doc. No. 78.)  Jay's firm, Field

25  Research, Inc., conducted 151 telephone interviews with GBS claims representatives.

26  Neither the interviewers nor the respondents knew the interviews would be used in

27  connection with this litigation.  According to GBS, the interviews confirmed that Plaintiffs'

28  work isn't routine at all, as Plaintiffs maintain, but that claims representatives "spend most

1  of their work time evaluating information, and making important decisions (or

2  recommendations that were 'often' or 'always' approved)."  (Opp'n Br. at 1, 9–11.)

3  **V.    DISCUSSION**

4       **A.    Requirements of Rule 23(b)(3)**

5       As the Court has explained, the parties' dispute appears to center around whether the

6  Plaintiffs' putative class satisfies the requirements of Rule 23(b)(3) that "the questions of law

7  or fact common to class members predominate over any questions affecting only individual

8  members, and that a class action is superior to other available methods for fairly and

9  efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).  GBS does not address the

10  prerequisites of Rule 23(a) in its opposition papers[3], nor did GBS's counsel address them

11  at oral argument.  Either way, the Court finds Plaintiffs' discussion of each factor to be

12  persuasive.  (Opp'n Br. at 24–27.)   The Court therefore assumes: (1) the class is so

13  numerous that joinder of all members is impossible[4]; (2) there are questions of law or fact

14  common to the class; (3) the claims of Plaintiffs are representative of the claims of the

15  putative class; and (4) the representative parties will fairly and adequately protect the class's

16  interests.  *See* Fed. R. Civ. P. 23(a).

17       "The Rule 23(b)(3) predominance inquiry tests whether proposed classes are

18  sufficiently cohesive to warrant adjudication by representation."  *Amchen Products, Inc. v.*

19  *Windsor*, 521 U.S. 591, 623 (1997).  The point of class certification, where it is appropriate,

20  is to achieve judicial economy, and "the notion that the adjudication of common issues will

21  help achieve judicial economy is an integral part of the predominance test."  *In re Wells*

22  *Fargo Home Mortg. Overtime Pay Litigation*, 571 F.3d 953, 959 (9th Cir. 2009) (internal

23  quotations and citations omitted).  The test turns on the balance of common to individual

24  ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯

25  [3] There is a vague reference to Rule 23(a)(4) in GBS's opposition brief at page 2: "If
the class representatives do not speak for the whole, and it is clear (as here) that there are
26  members of the alleged class who will describe very different duties and responsibilities,
there can be no class."  In addition, on page 17, GBS includes a case quote that references
27  Rule 23(a), but this appears in a section devoted to the argument that individualized issues
predominate over common ones in this case, which is of course a Rule 23(b)(3) question.

28  [4] Plaintiffs say the class numbers 444 persons.  (Class Cert. Mem. at 24.)  GBS says
there are 441 putative class members.  (Woods Decl., Doc. No. 74, ¶ 3.)

1   issues.  If common proof allows the Court to make a class-wide determination that

2   classifying plaintiffs as administrative employees is or isn't legitimate, then class certification

3   is appropriate.  If, however, there is an absence of common proof and the court can only

4   make determinations as to particular individuals, the class certification isn't appropriate.

5           **B.    The Parties' Positions**

6           Plaintiffs' position is that Rule 23(b)(3) is satisfied because the merits of classifying

7   Plaintiffs as administrative employees can be assessed with respect to the putative class as

8   a whole. (Class Cert. Mem. 28.) GBS disagrees, arguing that there are "material differences

9   person to person," and, as the testimonial evidence shows, that there is tremendous

10  variability in how Plaintiffs' and GBS's declarants describe the work of a claims

11  representative. (Opp'n Br. at 20.)  The following argument sums up GBS's position, which

12  counsel for GBS emphasized during oral argument:

13                  Plaintiffs' evidence suggests that they and their five declarants
                    perform, under close supervision, predominantly clerical work
14                  that consists of rote data entry, copying and pasting information,
                    and pushing paper.  The other evidence, including from the 22
15                  Declarants and the Field Research survey of 151 current and
                    former employees, shows that many class members perform a
16                  very different job: investigating claims, analyzing information,
                    setting reserves, reviewing and evaluating medical treatment,
17                  preparing plans of action, determining the settlement value of
                    claims, negotiating settlements, and working with defense
18                  counsel. (Opp'n Br. at 17–18.)

19  For example, Plaintiffs say they were required to follow rigid and standardized procedures,

20  such as those set forth in a "Best Practices" guide, in adjusting claims and "could not

21  exercise independent judgment or discretion as to any matters of significance." (Class Cert.

22  Mem. at 12.)  But Angela Singh, a senior claims representative with GBS, testified, in a

23  declaration submitted by GBS, "There is no document or policy that dictates what

24  conclusions I reach when I adjust claims for Gallagher's clients.   I make my own

25  determinations about compensability, reserves, settlements, medical treatment, litigation

26  strategy and other matters based on the facts of each claim." (Singh Decl., Doc. No. 79-3,

27  ¶ 11.)

28  //

1    For another example, Plaintiffs claim "the common functions performed by [claims

2 representatives] are primarily composed of routine and clerical job duties, the vast majority

3 of which is data intake, data entry and data communication." (Class Cert. Memo. at 9.) But

4 Claudia Huff, a GBS claims representative, explains that when she receives an insurance

5 claim, she "conduct[s] an investigation to determine whether the claim should be accepted,

6 delayed or denied" and ultimately "make[s] decisions or recommendations regarding

7 settlement for Gallagher's clients." (Huff Decl., Doc. No. 79-2, ¶¶ 13, 25.) That is not routine

8 or clerical work.

9    And so the evidentiary record in this case goes.  Plaintiffs describe the work of a

10 claims representative one way.  GBS describes it another way.  The conclusion GBS would

11 have the Court draw is that these differences show that individual issues predominate and

12 that there is no common proof of what claims representatives actually do that warrants

13 certifying this case as a class action.

14    **C.**  **GBS's Arguments on the Merits**

15    The Court at oral argument explained that GBS's opposition brief appeared to argue

16 that Plaintiffs were appropriately classified as administrative employees in the first place,

17 which is problematic on two levels.  First, that's an argument on the merits that isn't to enter

18 into the Court's analysis at the class certification stage.  Second, to the extent GBS

19 maintains that the Plaintiffs really are administrative employees, it has unwittingly backed

20 itself into the position  that common issues, not individual issues, predominate.  It doesn't

21 make much sense to say that all claims representatives are exempt from receiving overtime

22 pay and, at the same time, that individual issues predominate and a class-wide

23 determination of their exemptability, as it were, is impossible.  *See Wang v. Chinese Daily*

24 *News*, 231 F.R.D. 602, 613 (C.D. Cal. 2005) ("Defendant cannot, on the one hand, argue

25 that all reporters and account executives are exempt from overtime wages and, on the other

26 hand, argue that the Court must inquire into the job duties of each reporter and account

27 //

28 //

executive in order to determine whether that individual is exempt.").  But that is, in essence, the spirit of GBS's opposition to class certification.[5]

A close reading of GBS's brief confirms that GBS is far more concerned with establishing that Plaintiffs *are* exempt from overtime requirements than with driving home the point that there's no common proof to enable a class-wide determination.  Speaking of claims representatives *generally*, for example, GBS maintains:

- "Representatives engage in analytical work that requires them to make significant decisions and recommendations." (Opp'n Br. at 4.)

- "For each claim, a Representative conducts an investigation to determine whether s/he should accept, delay or deny the claim." (Opp'n Br. at 4.)

- "The strategies and tactics Representatives propose depend on the strength of the claim, its complexity, the treating physician's recommendations, whether the claim is litigated, and their own assessment of what steps would enable to client [sic] to resolve the claim at a reasonable cost."  (Opp'n Br. at 5.)

- "When Representatives determine that a claim warrants a higher reserve, they make recommendations that their supervisors and/or client almost always, or at least typically, approve." (Opp'n Br. at 6.)

- "Representatives make eligibility determinations for each claim they adjust, based on their assessment of the claim and the information they learn during their investigations." (Opp'n Br. at 6.)

- "Representatives work independently, not under close supervision." (Opp'n Br. at 8.)

- "Representatives delegate numerous clerical tasks to non-exempt Claims Assistants, including generating form letters and notices, making routine telephone calls, subpoenaing records, processing benefit payments, and paying bills." (Opp'n Br. at 8.)

Even though the bases for these points are the declarations of its own witnesses, read in

_____

[5] To be clear, the point here is not that GBS is estopped from arguing against class certification just because it has previously decided to classify all claims representatives as administrative employees.  That would be a fair argument, because there's nothing inconsistent about saying that *if* the classification is wrong, it's wrong with respect to *individual* claims representatives only.  But GBS's argument is very different.  It argues simultaneously that claims representatives as a group qualify for the administrative exemption, and that the Court must look at claims representatives one-by-one to determine whether they are exempt.  That is inconsistent.

1    context GBS clearly believes they are of *all* claims representatives.  It is telling, in fact, that

2    GBS claims the Jay survey "confirms that employees do not perform their work in the

3    manner described by Plaintiffs." (Opp'n Br. at 9.)  That tells the Court that GBS  believes

4    Plaintiffs are just wrong about the nature of their work, not that individualized issues

5    predominate and it's impossible to make a class-wide determination as to whether claims

6    representatives are appropriately classified as administrative employees.[6]

7         In fact, the Court has a hard time taking GBS seriously when it argues that "[t]aking

8    [Plaintiffs] at their word, the evidence shows profound, individualized differences in how

9    Representatives perform their jobs." GBS doesn't take Plaintiffs at their word.  Not only does

10   the Jay survey and the tenor of GBS's opposition brief suggest as much, but GBS also calls

11   attention to the fact that many of the Plaintiffs and Plaintiffs' five declarants did not perform

12   typical or satisfactory work, and that GBS fired four of the eight of them as a result.  (Opp'n

13   Br. at 12–13.)  This cuts against the claim that individual issues predominate; obviously

14   otherwise exempt administrative employees aren't entitled to overtime pay just because they

15   happen to perform poorly.  *Ramirez*, 20 Cal.4th at 804 ("[A]n employee who is supposed to

16   be engaged in sales activities during most of his working hours and falls below the 50

17   percent mark due to his own substandard performance should not thereby be able to avoid

18   a valid exemption."). GBS even argues that Plaintiffs, in their own words, "admitted that their

19   job descriptions – which identified the need to exercise discretion and independent judgment

20   – accurately described their jobs."  (Opp'n Br. at 1.)  Again, the Court has a hard time

21   believing GBS's argument that individual issues predominate when it opens its opposition

22   brief with the claim that Plaintiffs as much as admit they are administrative employees, the

23   implication of the claim being that a class-wide determination of Plaintiffs' appropriate

24   classification is plenty feasible. (*See also* Opp'n Br. at 3 ("Plaintiffs Carey and Keshishzadeh

25

---

26        [6] GBS also highlights that Plaintiffs adjust lost work time claims that "carry larger

27   potential exposure," the point being that claims representatives can therefore be distinguished from GBS's non-exempt employees who "typically adjust 'medical only' workers' compensation claims." (Opp'n Br. at 2.) Here again, GBS seems mostly concerned

28   with defending its policy of classifying claims representatives as exempt, inadvertently conceding that the merits of Plaintiffs' claims can be adjudicated on a class-wide basis.

1    admitted that their job descriptions accurately describe the duties Gallagher hired them to

2    perform.").)

3           In addition to offering substantial factual argument that the nature of Plaintiffs' work

4    qualifies them for designation as administrative employees, GBS also cites regulations and

5    case law that stand for the proposition that insurance claims adjusters are exempt.  This

6    further erodes the seriousness with which the Court can take GBS's position that individual

7    issues predominate and that there is no common proof with which to make a class-wide

8    determination that Plaintiffs either are or are not administrative employees.  For example,

9    GBS explains that regulations incorporated into Wage Order 4-2001 "specifically identify

10   'claims agents and adjusters' as the kind of employees who meet the test for whether their

11   work is 'directly related to management policies or general business operations.'" (Opp'n Br.

12   at 14–15 (*citing* 29 C.F.R. § 541.205(c)(5)).)  A Department of Labor opinion letter "stated

13   that insurance adjusters, who performed tasks such as investigating claims, evaluating

14   coverage and liability, establishing reserves, and collaborating with the company's counsel,

15   qualified as exempt even though they needed a supervisor's approval for some decisions

16   . . . ." (Opp'n Br. at 15 (*citing* DOL Op. Letter FLSA2002-11 (Nov. 19, 2002)).)  FLSA

17   regulations state:

18              Insurance claims adjusters generally meet the duties
                requirements for the administrative exemption, whether they
19              work for an insurance company or other type of company, if their
                duties include activities such as interviewing insureds, witnesses
20              and physicians . . . reviewing factual information to provide
                damage estimates; evaluating and making recommendations
21              regarding coverage of claims; determining liability and total value
                of a claim; negotiating settlements; and making
22              recommendations regarding litigation. (Opp'n Br. at 15 (*citing* 29
                C.F.R. § 5421.203(a)).)
23

24   And then there's case law.  GBS cites *In re Farmers Ins. Exch.*, 466 F.3d 853 (9th Cir. 2006),

25   *Cheatham v. Allstate Ins. Co.*, 465 F.3d 578 (5th Cir. 2006), and *Murray v. Ohio Cas. Corp.*

     (2005 U.S. Dist. LEXIS 41374 (S.D. Ohio Sept. 27, 2005), all of which hold that insurance
26
     claims adjusters qualify for the administrative exemption.  If the relevant regulations, and the
27
     case law, are so firmly on GBS's side, then the natural conclusion is that Plaintiffs are
28
     *categorically* exempt as administrative employees, not that the Court has to assess the work

1    of individual Plaintiffs, one by one, to assess their exemptability.  Over and over, GBS's

2    opposition reinforces this conclusion by arguing the merits of the underlying case.  For yet

3    another example, towards the end of its opposition brief, GBS argues that client-service

4    instructions, GBS's "Best Practices" guide, and GBS's "chain of command" do not foreclose

5    the exercise of discretion and independent judgment.  (*See* Opp'n Br. at 26–32.)  As much

6    as GBS might try to spin this point into the argument that individual issues predominate in

7    this case, it reads as a direct rebuttal to Plaintiffs' argument that because they worked under

8    guidelines and superiors they cannot be classified as administrative employees.  This is an

9    argument on the merits that undermines GBS's position with respect to class certification.

10          **D.    Case Law on Certification of Overtime Claims**

11          GBS cites a number of cases that it believes favor the denial of class certification.

12   These cases include: *Sepulveda v. Wal-Mart Stores, Inc.*, 237 F.R.D. 229 (C.D. Cal. 2006)

13   (denying motion to certify class of assistant store managers); *Jimenez v. Domino's Pizza,*

14   *Inc.*, 238 F.R.D. 241 (C.D. Cal. 2006) (denying motion to certify class of general managers),

15   *Marlo v. United Parcel Serv., Inc.*, 251 F.R.D. 476 (C.D. Cal. 2008) (*de*certifying class of

16   supervisors), *Dunbar v. Albertson's Inc.*, 141 Cal. App. 4th 1422 (2006) (upholding denial of

17   class certification of store managers), *Walsh v. IKON Office Solutions, Inc.*, 148 Cal. App.

18   4th 1440 (2007) (upholding decertification of a class of account managers), and *Keller v.*

19   *Tuesday Morning, Inc.*, 179 Cal. App. 4th 1389 (2009) (upholding denial of class certification

20   of store managers).

21          The Court has read each of these cases and has a very different view of their

22   significance.   In each case, class certification was deemed inappropriate because of

23   substantial variation in individual plaintiffs' day-to-day tasks and the amount of their time

24   spent performing exempt versus non-exempt tasks.  The plaintiffs in each case had rather

25   generic job titles that implied no specific duties, and indeed, made it very difficult to say of

26   them as a whole, "This is what they do."  "Where the relevant duties performed (i.e., those

27   that arguably constitute exempt activity) vary from class member to class member, many

28   //

1    courts have found that individual issues, rather than common issues, predominate."

2    *Campbell v. Pricewaterhouse Coopers, LLP*, 253 F.R.D. 586, 602 (E.D. Cal. 2008).

3    For example, in *Dunbar*, the trial court found that managers' duties were store-

4    specific, and varied according to such factors as store size, the number and type of

5    peripheral departments, the demographic makeup of the local community, and even the

6    incidence of criminal activity in the surrounding neighborhood. *Dunbar*, 141 Cal.App.4th at

7    1427. Likewise, in *Wal-Mart*, the court concluded that "Walmart's expectations as to

8    [assistant manager] duties are likely to require individual proof, since these expectations are

9    affected by so many store-specific factors." *Wal-Mart*, 237 F.R.D. at 249. The court in *Marlo*

10   reasoned that "[t]he declarations and deposition testimony of [Full-Time Supervisors]

11   submitted by the parties suggest variations in job duties that appear to be a product of

12   employees working at different facilities, under different managers, and with different

13   customer bases." *Marlo*, 251 F.R.D. at 486. Class certification was inappropriate in *Jimenez*

14   because the critical question was how much time general managers spent discharging

15   various duties, which called for an "individual, fact-specific analysis of each general

16   managers's performance of the managerial and non-managerial tasks." *Jimenez*, 238 F.R.D.

17   at 251. Finally, in *Walsh* a class of account managers, classified as exempt from the

18   overtime laws under the outside salesperson exemption, was decertified because "the

19   performance of the managers' primary functions varied significantly, depending upon

20   territory, number of customers, job orders, [and] support from customer service

21   representatives."[7] *Walsh*, 148 Cal.App.4th at 1454.

22   This case is different. Here, the question isn't what claims representatives actually

23   do or how they spend the bulk of their time, but how to describe or categorize what they *do*

24   do. This is a question, as the court in *Jimenez* recognized, that can be resolved on a class-

25

26   _____

     [7] The holding in *Walsh* is similar to that in *Vinole v. Countrywide Home Loans, Inc.*,
     571 F.3d 935 (9th Cir. 2009). In *Vinole*, the Ninth Circuit affirmed the denial of certification

27   of a class of mortgage consultants who were classified as exempt sales employees. It held
     that the plaintiffs' claims would "require inquiries into how much time each individual

28   [consultant] spent in or out of the office and how the [consultant] performed his or her job;
     all of this where the HLC was granted almost unfettered autonomy to do his or her job." *Id.*
     at 947.

1    wide basis.  *Jimenez*, 238 F.R.D. at 251 ("the . . . issue of how certain tasks should be

2    categorized . . . can easily be resolved on a class-wide basis").  The *Jimenez* court relied

3    heavily upon *Sav-On Drug Stores v. Superior Court*, 34 Cal.4th 319 (2004), a seminal case

4    in which a drug store chain's managers brought a class action seeking overtime wages, and

5    the court certified the class.  As *Jimenez* explains, "The predominating issues were whether

6    there had been an improper blanket reclassification and whether the generic duties

7    performed by operating manager and assistant managers were managerial or non-

8    managerial."  *Jimenez*, 238 F.R.D. at 252.  Similarly, the predominating issue here isn't what

9    claims representatives for GBS actually do or how they allocate their time, but whether the

10   work that they do can be fairly classified as administrative in the first place.  *See Bell v.*

11   *Farmers Ins. Exch.*, 115 Cal.App.4th 715, 742 (2004) (upholding certification of class of

12   insurance claims representatives in overtime case where "there were [no] differences among

13   the various duties performed by class members").

14          There is minimal evidence before the Court that members of the putative class

15   actually performed different tasks depending on where they worked, or the GBS client for

16   whom they adjusted claims.  That means GBS's reliance on *Dunbar*, *Wal-Mart*, *Marlo*,

17   *Jimenez*, and *Walsh* is misplaced.  *See Cruz v. Dollar Tree Stores, Inc.*, Case No. 07-2050,

18   2009 WL 1458032 at *8 (N.D. Cal. May 26, 2009) (distinguishing *Wal-Mart* and holding class

19   certification is appropriate when members of putative class perform "a finite number of

20   duties").  The core argument in GBS's opposition to class certification is that class members

21   describe the nature of their duties differently, not that claims representatives actually did

22   different things.  This leaves the Court with the overwhelming impression that one party is

23   simply wrong about whether it is appropriate to classify claims representatives as exempt,

24   not that it's impossible to make a class-wide determination because the work of individual

25   claims representatives can vary greatly from one employee to the next.  Surely, class

26   certification may be appropriate when "the primary dispute between an employer and its

27   employees [focuses] on how a single activity undertaken by all class members should be

28   treated."  *Campbell*, 253 F.R.D. at 603.  This has all the appearances of being such a case.

1    For the reasons given above, the Court concludes, on the record before it, that
2    individual issues predominate in this case and that the predominance requirement of Rule
3    23(b)(3) is satisfied.

4    **E.    The Superiority Requirement**

5    In addition to the predominance requirement, Rule 23(b)(3) also requires that class
6    resolution be "superior to other available methods for fairly and efficiently adjudicating the
7    controversy."  Fed. R. Civ. P. 23(b)(3).  GBS doesn't put up much of a fight on this prong,
8    devoting just over a page to the argument that a class action isn't superior to claims
9    representatives pursuing relief independently.  Its first point – that a class-wide trial would
10   be unmanageable – merely restates its position that individual issues predominate and that
11   there is no common proof with respect to the exemptability of the putative class.  (Opp'n Br.
12   at 21.)  The Court has already explained why it disagrees.

13   GBS's second point is that class members won't be discouraged from pursuing relief
14   if they have to do so on their own.  (Opp'n Br. at 22.)  "[E]ach employee," GBS explains,
15   "could win tens of thousands of dollars by prevailing on an individual claim."  (*Id.*)  Be that
16   as it may, the efficiencies still, in the Court's judgment, weigh in favor of class certification.
17   Of the four factors listed in Rule 23(b)(3) as pertinent to the predominance and superiority
18   requirements, only one remains a potential concern: "the class members' interests in
19   individually controlling the prosecution or defense of separate actions."  Fed. R. Civ. P.
20   23(b)(3)(A).[8]  Overtime wage and hour cases proceed as class actions regularly, however,
21   and there is no reason, at least right now, to believe that this case should not.  The claims
22   of the putative class members are identical, GBS's defenses are identical across class
23   members, and the case presents the straightforward question, answerable on a class-wide
24   basis with reference to common proof, whether the work that claims representatives do is
25   administrative or non-administrative in character.  In addition, these cases aren't cheap to

26   _____

27   [8] "[T]he likely difficulties in managing a class action," Fed. R. Civ. P. 23(b)(3)(D) is a
     potential concern, too, but the Court has already articulated its reasons for believing that
28   common issues predominate and that the basic question in this case is the merits of
     classifying the  generic duties of claims representatives as exempt.  Those same reasons
     lead the court to conclude that a class action would not be difficult to manage.

1  litigate, and it's likely cost-effective to both parties to settle, in one case, once and for all, the

2  proper employment classification, for overtime purposes, of the putative class.

3  **VI.    Conclusion**

4         The  main  question  Plaintiffs'  motion  for  class  certification  presents  is  whether

5  common issues predominate over individual ones in determining whether it is fair of GBS to

6  classify claims representatives as administrative employees, thereby depriving them of any

7  right to receive overtime pay.  This question, technically, isn't the entirety of the analysis —

8  the Court must also consider the class action prerequisites of Rule 23(a) as well as the

9  superiority requirement of Rule 23(b)(3) — but it is at the heart of the parties' dispute over

10  class certification in this case.  While Plaintiffs have the burden of showing "both an

11  ascertainable class and a well-defined community of interest among class members," *Sav-*

12  *On*, 34 Cal.4th at 326, the burden is slight, and "a court need only be able to make a

13  reasonable judgment that Rule 23 requirements are satisfied."  *Marlo*, 251 F.R.D. at 487.

14         Here, although the Court is mindful of the requirements of Rule 23, it has found it less

15  useful to proceed through them mechanically than to read carefully through the pleadings

16  and draw what it believes is an obvious inference.  What the parties disagree about is how

17  to describe a specific set of duties assigned to claims representatives.  It is *not* what those

18  duties  are  in  the  first  instance,  and  for  this  reason  the  Court  is  convinced  that  class

19  certification is appropriate.  As the court in *Campbell* explained, "[i]f the duties between class

20  members are similar, the exemption inquiry is likely susceptible to common proof, but if the

21  duties are not sufficiently similar, then the inquiry is unlikely to be susceptible to common

22  proof."  *Campbell*, 253 F.R.D. at 603–04.  There is no precedent for the proposition that

23  when parties have a difference of opinion over whether plaintiffs' work is rote and menial *or*

24  analytical and independent, a court should deny class certification.  That is the proposition,

25  however, that GBS's opposition to class certification embodies.

26         The Court does not reach this decision lightly.  It well knows that the class certification

27  decision, although it has nothing to do with the merits of a case, is often *the* decision for

28  litigants because of what it means for the settlement value of a case.  Merely having a case

certified can be a victory for plaintiffs and their counsel, and it can count as a loss for defendants who are better off settling than seeing a case to the end, no matter how baseless they believe it to be.  These high stakes explain, at least in part, why the parties briefed the motion so exhaustively (and, quite frankly, beyond what the Court considers useful).

Finally, the Court reiterates that a decision to certify a class, at least this early in the litigation, is not final.  If it becomes apparent that the Court is dealing with more than a difference of opinion between Plaintiffs and GBS about how best to characterize the work of a claims representative, or that the Court must decide the exemptability of claims representatives on an employee-by-employee basis, the Court will not hesitate to decertify the class.  Barring that realization, Plaintiffs' motion for class certification is **GRANTED**.  The Court did not rely on the expert testimony of Lavitt and Locker in reaching its decision, and therefore overrules, for now, GBS's objection to its admissibility.  It would be premature to issue a ruling, nonetheless, because, as GBS explains, "the standard for admitting expert testimony at class certification is 'more lenient' than the intensive review of expert testimony at trial," at it remains to be seen what use Plaintiffs will make of Lavitt and Locker's testimony going forward.

**IT IS SO ORDERED**.

DATED:  April 15, 2010

**HONORABLE LARRY ALAN BURNS**
United States District Judge