# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SCARLET KESHISHZADEH, an individual; on behalf of herself, and on behalf of all persons similarly situated,<br><br>            Plaintiffs,<br>vs.<br><br>ARTHUR J. GALLAGHER SERVICE CO., a Delaware Corporation,<br><br>            Defendants.<br>_____<br>JAMES CAREY, on behalf of himself and all others similarly situated,<br><br>            Plaintiffs,<br>vs.<br><br>ARTHUR J. GALLAGHER AND COMPANY, a Delaware Corporation, and GALLAGHER BASSETT SERVICES, INC., a Delaware Corporation, inclusive,<br><br>            Defendants. | CASE NO. 09cv0168-LAB (RBB)<br><br>(Consolidated w/ 09cv1273-LAB (RBB))<br><br>**ORDER DENYING DEFENDANTS' MOTION TO STAY** |

On April 23, 2010, Defendants filed an *ex parte* request to stay this case, or, in the alternative, push back the deadline for their summary judgment motion. This request was

///

filed approximately one week after the Court granted Plaintiffs' motion for class certification, and approximately ten days before Defendants' summary judgment motion was due.

The basis for Defendants' stay request is that the California Supreme Court has yet to issue a ruling in *Harris v. Superior Court*, 154 Cal.App.4th 164 (2007), which will have a lot to say about the critical issues in this case, particularly the contours of the "administrative exemption" from overtime requirements under the California Labor Code. The basis for their alternative request — for more time to file a summary judgment motion — is that the Court only recently certified the class, and discovery is not even complete.

## II.     Legal Standard

A district court has discretionary power to stay a case before it under *Landis v. North American Co.*, 299 U.S. 248, 254 (1936). "[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Id. Landis* established the following guidelines:

> Where it is proposed that a pending proceeding be stayed, the competing interests which will be affected by the granting or refusal to grant a stay must be weighed. Among those competing interests are the possible damage which may result from the granting of a stay, the hardship or inequity which a party may suffer in being required to go forward, and the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay.

*Id.* at 254. *See also Keating v. Office of Thrift Supervision*, 45 F.3d 322, 325 (9th Cir. 1995) (articulating similar considerations for decision whether to stay civil proceedings in light of parallel criminal proceedings); *Blue Cross and Blue Shield of Alabama v. Unity Outpatient Surgery Ctr.*, 490 F.3d 718, 724 (district court must consider interests of the parties, the public, and the court). "Only in rare circumstances will a litigant in one cause be compelled to stand aside while a litigant in another settles the rule of law that will define the rights of both." *Landis*, 299 U.S. at 255. At the same time, the Ninth Circuit has explained that "[a] trial court may, with propriety, find it is efficient for its own docket and the fairest course for the parties to enter a stay of an action before it, pending resolution of independent

proceedings which bear upon the case." *Leyva v. Certified Grocers of California, Ltd.*, 593 F.2d 857 (9th Cir. 1979).

If there's a chance that a stay will "work damage" to the opposing party, the party requesting the stay "must make out a clear case of hardship or inequity in being required to go forward." *Landis*, 299 U.S. at 255. The greater the damage, the clearer the case must be. *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962). If, for example, a plaintiff alleges no continuing harm, and a stay would merely delay the plaintiff's recovery of damages for a past harm, the "damage" of a stay may be minimal. *Id.*

The potential length of a stay is certainly relevant to the decision whether to grant it. *See Richards v. Ernst & Young LLP*, Case No. 08CV4988, 2010 WL 682314 at *4 (N.D. Cal. Feb. 24, 2010). *Richards* is a wage an hour case that raises the question whether, under California law, an employer need only "provide" meal and rest breaks to employees, or must also "ensure" that employees take them. That question is also before the California Supreme Court in *Brinker Rest. Corp. v. Superior Court*, 85 Cal. Rptr.3d 688 (2008), but the court in *Richards* refused to issue a stay and wait for a decision:

> If it had a reasonable expectation that the California Supreme Court would decide the issue within a matter of months, this Court likely would stay the instant action pending that decision. However . . . while *Brinker* has been fully briefed, oral argument has not been set. Under these circumstances, it may be quite some time before the issue is decided.

*Id.*[1] Where related civil proceedings are the basis for a stay request, as here and as in *Richards*, "[a] stay should not be granted unless it appears likely the other proceedings will be concluded within a reasonable time in relation to the urgency of the claims presented to the court." *Leyva v. Certified Grocers of California, Ltd.*, 593 F.2d 857, 863 (9th Cir. 1979).

/ / /

---

[1] The Court recognizes that other district courts have stayed wage and hour cases in light of *Brinker*. *See Minor v. Fedex*, Case No. 09CV1375, 2009 WL 1955816 (N.D. Cal. Jul. 6, 2009); *Bibo v. Federal Express, Inc.*, Case No. 07CV2505, 2009 WL 1068880 (N.D. Cal. Apr. 21, 2009); *Lew v. Countrywide Financial Corp.*, Case No. 08CV1993, 2009 WL 1384975 (N.D. Cal. Feb. 24, 2009); *Gabriella v. Wells Fargo Financial, Inc.*, Case No. 06CV4347, 2009 WL 188856 (N.D. Cal. Jan. 26, 2009). *Gabriella* and *Lew* were stayed pursuant to motions filed by the plaintiffs, *Minor* was stayed pursuant to a motion filed by the defendant, and *Bibo* appears to have been stayed, *sua sponte*, by the court.

Federal courts are bound by the decisions of a state's highest court when interpreting that state's law, *Ariz. Elec. Power Coop., Inc. v. Berkeley*, 59 F.3d 988, 991 (9th Cir. 1995), and, as cases like *Minor* show, it may make sense to stay a federal case, or certain claims at issue in a federal case, while awaiting a definitive ruling from a state court on a critical point of law. Stays are also an option when one party is involved in parallel cases that ought to be sequenced rather than proceed simultaneously. *See*, *e.g.*, *CMAX* (upholding stay of civil case between freight companies while an administrative enforcement action was pending against plaintiff); *Leyva* (stay of unpaid wages claim under Fair Labor Standards Act may be appropriate while similar claim was in arbitration under a collective bargaining agreement).

**III.   Discussion**

Plaintiffs claim they'll be prejudiced by a stay because the Defendants waited until late in the game to make the request. There's some merit to this. The California Supreme Court agreed to hear *Harris* on November 28, 2007. This case was filed over a year later, on January 28, 2009. Defendants could have moved for a stay then, but they didn't. Instead, they went forward with discovery and opposed Plaintiffs' motion for class certification on the merits. Only after the Court granted Plaintiffs' motion did Defendants move for a stay.

Contrast that with the time line of events in *Gabriella*, *Lew*, *Minor*, all of which were stayed until the California Supreme Court decides *Brinker*, and all of which Defendants believe support a stay in this case. The California Supreme Court decided to review *Brinker* on October 22, 2008. In *Gabriella*, class certification was briefed and denied *before* that decision, and plaintiffs' motion to stay was filed within two months of it. In *Lew*, discovery was underway when the petition for review in *Brinker* was granted, and plaintiffs filed a motion to stay within two months. *Minor* was removed to federal court on March 27, 2009, and the defendants moved for a stay three months later, before anything important happened in the case.

A case management order entered in this case on July 7, 2009 — by which time *Harris* had been pending for over seven months — set forth deadlines for discovery, class

certification motions, and pretrial motions. (Doc. No. 40.) A subsequent order entered on October 20, 2009, extended the deadline for class certification motions from November 17, 2009 to January 15, 2010. (Doc. No. 49.) If the California Supreme Court's decision in *Harris* is as essential to this case as Defendants say it is, they should have moved for a stay a long time ago, when the Court was setting the relevant discovery and motion deadlines.

The nature of the relief Plaintiffs seek only partially weighs in favor of a stay. To the extent Plaintiffs seek overtime pay for hours they've already worked, they aren't alleging a continuing harm that would be exacerbated by a stay. On the other hand, some of the Plaintiffs are still employed by Defendants, and they're working hours for which they believe they ought to be paid overtime — or else, presumably, not have to work at all. A stay would have the effect of locking in place an allegedly harmful employment policy for the foreseeable future.

Plaintiffs further argue that a stay will hurt their case because their evidence is as fresh now as it will ever be. *See Blue Cross and Blue Shield*, 490 F.3d at 724 ("Delay inherently increases the risk that witnesses' memories will fade and evidence will become stale.") (internal quotations and citation omitted). Plaintiffs argue: "This is especially true here where the Defendants fail to record the overtime worked by the employees in the Class, only to later contest the amount of overtime worked by the employees at trial." (Doc. No. 101, p.4.) This isn't the best argument. The issue to be tried in this case is whether Plaintiffs' work as claims adjusters requires (or required) the exercise of independent discretion and judgment such that they qualify as administrate employees under the California Labor Code. With respect to that issue, the evidence is basically in. The number of overtime hours Plaintiffs worked will determine their damages awards, if any, but it isn't, technically speaking, a matter to be tried. Nonetheless, the Court accepts Plaintiffs' point that if the Court delays this case indefinitely, Plaintiffs will have a harder time accounting for the overtime hours they worked when the time comes to do so. This is intuitive. A lawyer who bills by the hour has a much easier time remembering what he did that *day* than what he did that *month* or that *year*.

1    So that is how the Court sees a stay from the perspective of the Plaintiffs. There's no doubt that a stay will "work damage" to them. Defendants have waited far longer than they should have to request a stay, and given the Plaintiffs, not to mention the Court, the unmistakable impression that they're prepared to litigate this case. Additionally, Plaintiffs allege a continuing harm in this case, and a stay would prolong that harm. Finally, a stay will force Plaintiffs, if and when the time comes, to look even farther into the past to account for the overtime hours they worked. Defendants must therefore "make out a clear case of hardship or inequity in being required to go forward." *Landis*, 299 U.S. at 255.

Defendants' interests here are, more or less, aligned with those of the Court. Defendants believe that *Harris* holds the key to the core legal issue in this case, and that it doesn't make sense to go forward so long as *Harris* is pending. "Litigating the central issue of the case in the dark will waste the parties' time and resources, as well as the Court's," they say. (Doc. No. 99-1, p.3.) Plaintiffs disagree: "*Harris* is nothing more than yet one more wage and hour decision, that may be relevant, but does not address the precise issue in this case." (Doc. No. 101, p.7–8.)

The Court disagrees with Plaintiffs' assessment. The plaintiffs in *Harris* are claims adjusters for insurance companies. The question in *Harris* is whether they are exempt from the overtime requirements of the California Labor Code. Contrary to Plaintiffs' arguments, *Harris* is *highly relevant* to this case. In fact, the Ninth Circuit, in light of *Harris*, has withdrawn from submission three cases that don't even involve insurance claims adjusters or the administrate exemption. The cases actually raise the question whether the "outside salesperson" exemption from the overtime requirement applies to pharmaceutical representatives who provide doctors with information about drugs but don't actually execute a sale. *See D'Este v. Bayer Corp.*, No. 07-56577; *Barnick v. Wyeth*, No. 07-56684; *Menes v. Roche Laboratories*, No. 08-55286. *Harris* has all the appearances of a very important case that will speak not only to the specific issues involved in this case, but also to the broader spirit of the overtime requirements and various exemptions under California law.

/ / /

The United States Secretary of Labor has even filed an amicus brief. *See* 2008 WL 6083951.

Plaintiffs, nevertheless, persist in their feeble attempt to downplay *Harris*. They maintain the California Supreme Court "represents" the issue in *Harris* as follows: "Do claims adjusters employed by insurance companies fall within the administrative exemption . . . to the requirement that employees are entitled to overtime compensation." Seizing on the words "employed by insurance companies," they distinguish this case on the ground that Plaintiffs weren't employed by an insurance company, but by a third party administrator of insurance claims. Thus, Plaintiffs argue that *Harris* is distinguishable and that *Bell v. Farmers Ins. Exchange*, 115 Cal.App.4th 715 is controlling law. There are several problems with Plaintiffs' position.

First, the statement of the issue in *Harris* that Plaintiffs cite — and for which they provide no citation — appears to come from a "Case Summary" on the California Supreme Court's website, right before the bolded disclaimer, "NOTE: The statement of the issues is intended simply to inform the public and the press of the general subject matter of the case. The description set out above does not necessarily reflect the view of the court, or define the specific issues that will be addressed by the court."

Second, the appellant's Petition for Review in Harris defines the issue a little differently:

> Is the 'administrative exemption' defined by the Wage Orders issued by California's Industrial Welfare Commission (IWC) limited to those few employees who perform work at the level of 'policy or general operations,' or does it also include employees whose work affects policy or whose responsibility it is to execute or carry it out — as has been the established standard for more than 50 years? *Harris*, 2007 WL 3114518 at *1.

An amicus brief filed by the United States Secretary of Labor puts the issue this way:

> Whether the insurance claims adjusters in this case performed duties that qualify for California's 'administrative' exemption from the state's overtime pay requirements, which incorporates the Department of Labor's pre-2004 regulations defining exempt 'administrative' employees under the Fair Labor Standards Act of 1938. *Harris*, 2008 WL 6083951 at *7.

///

The Court has looked at the pleadings in *Harris*, and believes these statements are accurate — and they frame the issue in *Harris* in a way that puts that case on all fours with this one.

Third, Plaintiffs reliance on *Bell* as controlling law is overblown. As Defendants noted in their opposition to class certification, *Bell* was in some sense an easy case: the defendants actually conceded that plaintiffs' work was "routine and unimportant." *Bell*, 87 Cal.App.4th at 828. Moreover, the court recognized that the administrative/production dichotomy on which its decision depended, and which is implicated in this case, "offers a broad distinction demanding further refinement in some cases" and "is a somewhat gross distinction that may not be dispositive in many cases." *Bell*, 87 Cal.App.4th at 820, 826. Although *Bell* remains good law, the decision has been heavily criticized by other courts, and its emphasis on the administrative/production dichotomy has even been rejected by the Ninth Circuit. The *Bell* decisions are cited heavily in the *Harris* appellants' opening brief — more than any other cases, in fact — and *Harris* will undoubtedly have something important to say about them. Both cases deal with the applicability of the administrative exemption from the overtime laws to claims adjusters employed by insurance companies.

Fourth — and this is a critical point — Plaintiffs are likely wrong as a matter of law to suggest this case is different from *Harris* because the Plaintiffs here work (or worked) for a third party administrator of insurance claims rather than for an insurance company directly. They argue:

> In *Harris*, the issue is whether claims adjusting is part of the production of the insurance product sold by the insurance company, which is not the case here. In contrast, the claims representatives here perform workers' compensation claims services for third parties which is the very product sold by Defendants to its customers as these customers all carried their own insurance not purchased from the Defendants.

(Doc. No. 101, p.2.) The Court understands Plaintiffs to be arguing that an otherwise exempt administrative employee becomes non-exempt the moment he or she is outsourced. That's not true. Wage Order 4-2001, with which both parties are familiar, states that an administrative employee is one whose duties and responsibilities involve "[t]he performance

of office or non-manual work directly related to management policies or general business operations of his/her employer *or his/her employer's customers*." The Seventh Circuit has spoken precisely to this point:

> "[T]he plaintiffs make too much of the fact that CCS does not actually underwrite or sell insurance policies. The gist of the plaintiffs' argument is that CCS 'produces' claims-processing services (though not the underlying policies) and therefore MDAs are essentially responsible for 'producing' CCS's 'product.' This argument hinges on a distinction between in-house claims processing by insurance companies, which the plaintiffs view as ancillary to the 'production' of the policies themselves, and outsourced claims processing of the type performed by CCS, which they interpret as a 'product' unto itself. Under the Department of Labor's interpretive regulations, however, this distinction is immaterial, as 'administrative operations of a business' may 'be those of the employer *or* the employer's customers." *See* 29 C.F.R. § 541.205(a), (d) (emphasis added).

*Roe-Midgett v. CC Services, Inc.*, 512 F.3d 865 (7th Cir. 2008). The bottom line is that Plaintiffs' attempt to distinguish *Harris* from this case is not well-founded. *Harris* portends to offer substantial guidance to the Court in deciding this case. Moreover, the Court doesn't share the Plaintiffs' view that this case is morally urgent because their rights are on the line. The truth is: (1) there has been a relatively recent boom in wage and hour class actions; (2) many of these cases can go either way, and they often turn on intricate analyses of statutory and regulatory authority, which can be shifting; and (3) to the extent the law is settled, it is complex and not necessarily intuitive. Even if Plaintiffs' lawsuit is meritorious in the final analysis, it will be a victory only in the minimal, almost tautological sense that the law happens to be on their side.

**IV.   Conclusion**

So, to stay or not to stay? To summarize, the Court doesn't doubt that a stay will prejudice Plaintiffs. They've been given every indication that Defendants are prepared to litigate this case, they allege a continuing harm, and there's some relevant evidence – the actual overtime hours Plaintiffs worked – that will be easier to tabulate sooner rather than later. This means Defendants need to make out "a clear case of hardship or inequity in being required to go forward." *Landis*, 299 U.S. at 255. They haven't done that, however,

in the Court's judgment. The Court appreciates the importance of *Harris* to a clear adjudication of the legal issues in this case, but it can't get over the fact that the California Supreme Court agreed to review *Harris* before this case was even filed. Defendants' request for a stay simply comes too late.

The motion is therefore **DENIED**. It's only fair, however, to give Defendants additional time to file a summary judgment motion. They've asked for 60 days, and the Court **GRANTS** that request; the motion is due 60 days from the date this order is entered. To the extent Defendants believe they have not received critical discovery, they may ask Magistrate Judge Brooks to intervene. The 60-day deadline is firm, however, and will not be extended absent a showing of extraordinary good cause.

**IT IS SO ORDERED**.

DATED: May 12, 2010

*[signature]*

**HONORABLE LARRY ALAN BURNS**
United States District Judge