1    *Counsel of Record*
     *Listed on next page*

2

3

4

5

6

7

8             **UNITED STATES DISTRICT COURT**

9            **SOUTHERN DISTRICT OF CALIFORNIA**

10

| | |
|---|---|
| SCARLET KESHISHZADEH and LISA ARCHER, as individuals, on behalf of themselves, and on behalf of all persons similarly situated, | CASE NO. 3:09-CV-0168 LAB (RBB) |
| | (Consolidated with Case No. 3:09-CV-1273 LAB (RBB)) |
| Plaintiffs, | **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF JOINT MOTION FOR ORDER:** |
| vs. | |
| ARTHUR J. GALLAGHER SERVICE CO., a Delaware Corporation | **(1)  GRANTING CONDITIONAL CERTIFICATION OF SETTLEMENT CLASS AND PRELIMINARY APPROVAL OF SETTLEMENT;** |
| Defendants. | |
| JAMES CAREY, on behalf of himself and all others similarly situated, | **(2)  APPROVING CLASS NOTICE AND RELATED MATERIALS;** |
| Plaintiffs, | **(3)  APPOINTING SETTLEMENT ADMINISTRATOR; AND** |
| vs. | **(4)  SCHEDULING FINAL APPROVAL HEARING** |
| ARTHUR J. GALLAGHER AND COMPANY, a Delaware Corporation, and GALLAGHER BASSETT SERVICES, INC., a Delaware Corporation, inclusive, | |
| Defendants. | Judge:      Hon. Larry A. Burns |
| | Court no.:   9 (2nd Flr.) |

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LEGAL_US_W # 65926110.2

       **MEMORANDUM IN SUPPORT OF JOINT MOTION FOR PRELIMINARY SETTLEMENT APPROVAL**

BLUMENTHAL, NORDREHAUG & BHOWMIK
NORMAN B. BLUMENTHAL (SB# 68687) norm@bamlawlj.com
KYLE R. NORDREHAUG (SB# 205975) kyle@bamlawlj.com
APARAJIT BHOWMIK (SB# 248066) aj@bamlawlj.com
2255 Calle Clara
La Jolla, CA  92037
Telephone: (858) 551-1223
Facsimile: (858) 551-1232

UNITED EMPLOYEES LAW GROUP
WALTER HAINES (SB# 71705)
65 Pine Avenue, Suite 312
Long Beach, CA  90802
Telephone: (562) 256-1047
Facsimile: (562) 256-1006

Attorneys for Plaintiffs, SCARLET KESHISHZADEH
and LISA ARCHER

JAMES HAWKINS, APLC
JAMES R. HAWKINS (SB# 192925) james@jameshawkinsaplc.com
GREGORY E. MAURO (SB# 222239) greg@jameshawkinsaplc.com
9880 Research Drive, Suite 200
Irvine, CA  92618
Telephone:  (949) 387-7200
Facsimile:  (949) 387-6676

LAW OFFICES OF SEAN S. VAHDAT & ASSOCIATES
SEAN SASAN VAHDAT (SB# 239080) sean@vahdatlaw.com
7700 Irvine Center Drive, Suite 800
Irvine, CA  92618
Telephone:  (949) 788-2949
Facsimile:  (949) 788-2950

Attorneys for Plaintiff, JAMES CAREY

PAUL, HASTINGS, JANOFSKY & WALKER LLP
M. KIRBY C. WILCOX (SB# 78576) kirbywilcox@paulhastings.com
ZACH HUTTON (SB# 234737) zachhutton@paulhastings.com
55 Second Street, Twenty-Fourth Floor
San Francisco, CA  94105-3441
Telephone:  (415) 856-7000
Facsimile:  (415) 856-7100

Attorneys for Defendants
ARTHUR J. GALLAGHER SERVICE CO.
ARTHUR J. GALLAGHER & CO. and
Gallagher Bassett Services, Inc.

1

**TABLE OF CONTENTS**

2

**Page**

3   I.     INTRODUCTION ........................................................................................ 2

4   II.    OVERVIEW OF THE PROPOSED SETTLEMENT ...................................... 2

    III.   SUMMARY OF THE LITIGATION .............................................................. 3

5   IV.    THE SETTLEMENT TERMS ....................................................................... 7

6          A.   The Gross Settlement Payment ......................................................... 7

7          B.   Payment of Settlement Shares .......................................................... 7

           C.   Distribution of Unclaimed Funds and Uncashed Checks .................. 8

8          D.   Scope of the Release ........................................................................ 8

9          E.   Objections and Opt-Out Process ...................................................... 8

           F.   Termination of Settlement ................................................................ 9
10
           G.   Class Representative Payments; Class Counsel Attorneys' Fees Payment and
11              Class Counsel Litigation Expenses Payment ................................... 9

12         D.   Timing of Disbursements ............................................................... 10

13  V.     THE SETTLEMENT MEETS ALL CRITERIA NECESSARY FOR
           PRELIMINARY APPROVAL ..................................................................... 10
14
           A.   The Role Of The Court In Preliminary Approval Of A Class Action
15              Settlement ...................................................................................... 11

16         B.   Factors To Be Considered In Granting Preliminarily Approval ...... 12

                1.   The Settlement is the Product of Serious, Informed and
17                  Noncollusive Negotiations ..................................................... 13

18              2.   The Settlement Has No "Obvious Deficiencies" and Falls Within
                    the Range for Approval .......................................................... 14
19
                3.   The Settlement Does Not Improperly Grant Preferential Treatment
20                  To The Class Representative or Segments Of The Class ........... 17

21              4.   The Stage Of The Proceedings Is Sufficiently Advanced To Permit
                    Preliminary Approval Of The Settlement ................................ 18
22
    VI.    CONDITIONAL CERTIFICATION OF A SETTLEMENT CLASS IS
           APPROPRIATE ......................................................................................... 18
23
           A.   The Numerosity Requirement Is Met ............................................. 19
24
           B.   The Commonality Requirement Is Met ........................................... 19
25
           C.   The Typicality Requirement Is Met ................................................ 20

26         D.   Adequacy of Representation ........................................................... 20

           E.   Class Certification Is Proper Under Rule 23(b)(3) ......................... 20
27
    VII.   THE PROPOSED METHOD OF CLASS NOTICE IS APPROPRIATE ........ 21
28

**TABLE OF CONTENTS**
(continued)

Page

VIII.   THE COURT SHOULD APPOINT GILARDI & CO. AS THE SETTLEMENT
        ADMINISTRATOR ...................................................................................................... 24

IX.     CONCLUSION ............................................................................................................. 24

LEGAL_US_W # 65926110.2

# TABLE OF AUTHORITIES

**Cases**

Alberto v. GMRI, Inc.,
    252 F.R.D. 652 (E.D. Cal. Jun. 24, 2008) ........................................ 12

Barcia v. Contain-A-Way,
    2009 WL 587844 (S.D. Cal. March 6, 2009) ................................... 11

Brotherton v. Cleveland,
    141 F.Supp.2d 907 (S.D.Ohio 2001) .............................................. 17

Chun-Hoon v. McKee Foods Corp.,
    2009 WL 3349549 (N.D. Cal. Oct., 15, 2009) ............................ 8, 16

Cruz v. Dollar Tree Stores,
    2010 WL 3619800 (N.D. Cal. Sept. 9, 2010) .................................. 16

Enter. Energy Corp. v. Columbia Gas Transmission Corp.,
    137 F.R.D. 240 (S.D. Ohio 1991) ................................................... 17

Fry v. Hayt, Hayt & Landau,
    198 F.R.D. 461 (E.D. Pa 2000) ................................................. 19, 20

Gautreaux v. Pierce,
    690 F.2d 616 (7th Cir. 1982) .......................................................... 11

Gay v. Waiters' & Dairy Lunchmen's Union,
    489 F.Supp. 282 (N.D. Cal. 1980) .................................................. 19

Glass v. UBS Fin. Servs.,
    2007 U.S. Dist. LEXIS 8476 (N.D. Cal. January 27, 2007) ....... 16, 17

Hanlon v. Chrysler Co.,
    150 F.3d 1011 (9th Cir. 1998) ................................................... 15, 20

In re Dun & Bradstreet Credit Servs. Customer Litig.,
    130 F.R.D. 366 (S.D. Ohio 1990) ................................................... 17

In re Wash. Public Power Supply System Sec. Litig.,
    720 F. Supp. 1379 (D. Ariz. 1989) ............................................ 11, 14

Kirkorian v. Borelli,
    695 F. Supp. 446 (N.D. Cal. 1988) ................................................. 11

Marlo v. United parcel Service,
    251 F.R.D. 476 (C.D. Cal. 2008) .................................................... 16

Mercury Interactive Corp. Secs. Litig. V. Mercury Interactive Corp.,
    2010 U.S. App. Lexis 17189 (9th Cir. 2010) .................................... 9

Officers for Justice v. Civil Serv. Comm'n,
    688 F.2d 615 (9th Cir. 1982) ............................................... 11, 12, 15

LEGAL_US_W # 65926110.2

1

**TABLE OF AUTHORITIES**
**(continued)**

2

3
Philadelphia Housing Authority v. American Radiator & Standard Sanitary Corp.,
    323 F. Supp. 364 (E.D. Pa. 1970) .................................................................. 11

4

Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson,
5
    390 U.S. 414 (1968) ........................................................................................ 11

6
Staton v. Boeing,
    327 F.3d 938 (9th Cir. 2003) ......................................................................... 12

7

Van Vranken v. Atlantic Richfield Co.,
8
    901 F.Supp. 294 (N.D. Cal. 1995) ................................................................ 17

9
Wamboldt v. Safety-Kleen Systems,
    2010 WL 3743925 (N.D. Cal. 2010) ............................................................. 15
10

Weinberger v. Kendrick,
11
    698 F.2d 61 (2d Cir. 1982) ............................................................................. 11

12
Williams v. Costco Wholesale Corp.,
    2010 WL 761122 (S.D. Cal. March 4, 2010) ................................................. 11
13

14
**Statutes**:

15
29 C.F.R. § 541.203 .............................................................................................. 15

16
28 U.S.C. § 1711 ................................................................................................... 24

17
Cal. Business and Professions Code §17200 ........................................................ 4, 5

18
Cal. Labor Code §226 ......................................................................................... 4, 5, 8

19
Cal. Labor Code §226.7 ......................................................................................... 8

20
Cal. Labor Code §510 ............................................................................................ 8

21
Cal. Labor Code §1194 .......................................................................................... 8

22
Cal. Labor Code §1198 .......................................................................................... 8

23
Fed. Rules Civ. Proc., rule 23 ...................................................................... passim

**Secondary Authorities:**
24
2 H. Newberg & A. Conte, Newberg on Class Actions (3d ed. 1992) ............... 10, 11, 24
25

Manual for Complex Litigation, Second §30.44 (1993) .................................. 10, 12, 24
26

3B J. Moore, Moore's Federal Practice §§23.80 - 23.85 (2003) ....................... 12

27

28

## I.    INTRODUCTION

Plaintiffs and Defendants Arthur J. Gallagher Service Co., Arthur J. Gallagher & Co., and Gallagher Bassett Services, Inc. (collectively referred to herein as "Gallagher") have reached a full and final settlement of the above-captioned action, which is set forth in the Settlement Agreement filed herewith.[1]  By this motion, Plaintiffs and Defendants respectfully seek an order (1) conditionally certifying the Settlement Class and granting preliminary approval of the Settlement; (2) approving the Class Notice, Claim Form, form of Election Not to Participate to be distributed to Settlement Class Members; (3) appointing Gilardi & Co. to act as the Settlement Administrator; and (4) scheduling a Final Approval Hearing.

As consideration for this Settlement, Gallagher shall pay a sum equal to Three  Million Nine Hundred Thousand Dollars ($3.9 million) which shall include all claims of the Settlement Class members, as well as Class Counsel's attorneys' fees and costs, incentive awards for the Class Representatives, PAGA payment, and the cost of class notice and claims administration. The Settlement is non-reversionary and if any Settlement Class Members fail to submit claims, any unclaimed amount will not revert to Gallagher.  This settlement is an outstanding result for the Settlement Class Members in light of the serious issues regarding the merits of their claims, particularly the applicability of the administrative exemption.   Moreover, there was further uncertainty as to whether class certification could have been maintained throughout the litigation.

## II.    OVERVIEW OF THE PROPOSED SETTLEMENT

Counsel for the Parties, after litigation and settlement negotiations, agreed to a settlement that is fair, reasonable and favorable to the proposed Settlement Class, which includes:

> All persons who work or worked for Gallagher Bassett Services, Inc. in California, at any time from January 28, 2005 through the date of preliminary court approval of the Settlement, as a Claim Representative, Senior Claim Representative, Claims Adjustor, Claims Adjustor Senior, and/or Claims Specialist.[2]

---

[1] A copy of the Settlement Agreement ("Agmt.") is attached as <u>Exhibit 1</u> to the Declaration of Norman Blumenthal, served and filed herewith.  Capitalized terms in this Memorandum have the same meaning as contained in the Settlement Agreement.

[2] The proposed Settlement Class includes approximately 449 individuals who adjusted workers' compensation claims, and therefore are members of the class certified by the Court in its April 14, 2010 order (Docket No. 98), and also includes approximately 126 individuals who adjusted other

The Parties scheduled a mediation before Anthony Piazza, a preeminent mediator of wage and hour class actions.  (Decl. Blumenthal ¶ 5).  The parties prepared for the mediation by exchanging payroll data, calculating damages and submitting mediation briefs to Mr. Piazza.  As a result of the mediation process, the parties reached a settlement that they believe to be fair and reasonable in light of the experience of the Parties' attorneys as Counsel in other wage and hour cases, and the uncertainties and cost of the years of litigation the Parties faced if the settlement was not reached.  (Decl. Blumenthal, ¶ 5).

Under the terms to which the Parties have agreed, Gallagher will make a payment of Three Million Nine Hundred Thousand Dollars ($3.9 million) which shall include all claims of the Settlement Class Members, as well as Class Counsel's attorneys' fees and costs, incentive awards for the Class Representatives, PAGA payment, and the cost of class notice and claims administration ("Gross Settlement Amount").  In addition to the Gross Settlement Amount, Gallagher will pay any required employer payroll taxes owing on the portion of the Settlement that is allocated to wages.  (Decl. Blumenthal, ¶ 3).

The Settlement Agreement provides for a claims process requiring payment on each timely and valid claim submitted by Settlement Class Members. This is a non-reversionary Settlement, where no portion of the Gross Settlement Amount will revert to Gallagher.  (Decl. Blumenthal, ¶ 4).

**III.   SUMMARY OF THE LITIGATION**

On January 28, 2009, plaintiff Scarlet Keshishzadeh filed a Complaint against Gallagher, alleging that Gallagher misclassified "Claims Examiner Employees" in the United States as exempt from federal overtime requirements, and misclassified "Claims Examiner Employees" in California as exempt from state overtime requirements.  (Docket No. 1.)  Keshishzadeh asserted claims that Gallagher failed to pay overtime wages in violation of the federal Fair Labor Standards Act ("FLSA"); failed to pay overtime wages in violation of California wage and hour

---

insurance claims.  Plaintiffs originally sought to certify a certify a class comprised of these individuals, and therefore obtained extensive discovery related to their jobs, work histories, and compensation.  (Decl. Blumenthal ¶ 3).

**MEMORANDUM IN SUPPORT OF JOINT MOTION FOR PRELIMINARY SETTLEMENT APPROVAL**

law and California Business and Professions Code section 17200 et seq.; failed to pay wages due at termination of employment in violation of California Labor Code sections 201-203; failed to provide accurate, itemized employee wage statements in violation of California Labor Code section 226; and failed to indemnify employees for business expenses in violation of California Labor Code section 2802.  (*Id.*)  Plaintiff Keshishzadeh sought to certify a class composed of herself and similarly situated individuals and to recover from Gallagher back wages, interest, penalties, and attorneys' fees and costs.  (*Id.*) (Decl. Blumenthal, ¶ 7).

On March 23, 2009, plaintiff Keshishzadeh filed a First Amended Complaint which, *inter alia*, revised certain of her legal theories while retaining the material allegations of her claims. (Docket No. 13.)  (Decl. Blumenthal, ¶ 7).

On June 11, 2009, plaintiff James Carey filed a Complaint against Gallagher, alleging that Gallagher misclassified "Claims Representatives" in the United States as exempt from federal overtime requirements, and misclassified "Claims Representatives" in California as exempt from state overtime requirements.  (Carey Docket No. 1.)  Carey asserted claims that Gallagher failed to pay overtime wages in violation of the federal Fair Labor Standards Act ("FLSA"); failed to pay overtime wages in violation of California wage and hour law and California Business and Professions Code section 17200 *et seq*.; failed to provide meal and rest breaks in violation of California Labor Code section 512; failed to pay wages due at termination of employment in violation of California Labor Code sections 201-203; and failed to provide accurate, itemized employee wage statements in violation of California Labor Code section 226.  (*Id.*)  Plaintiff Carey sought to certify a class composed of himself and similarly situated individuals and to recover from Gallagher back wages, interest, penalties, and attorneys' fees and costs.  (*Id.*)  (Decl. Blumenthal, ¶ 8).

On July 1, 2009, the District Court consolidated plaintiff Carey's civil action with plaintiff Keshishzadeh's civil action.   (Docket No. 38.)   On July 9, 2009, Plaintiffs filed a Second Amended Complaint, adding Lisa Archer as a plaintiff.   (Docket No. 42.)  On November 5, 2009, Plaintiffs filed a Consolidated Class Action Complaint, alleging that Gallagher misclassified "Claims Examiner Employees" in California who adjust workers' compensation claims as exempt

from state overtime requirements.  (Docket No. 54.)  Plaintiffs asserted claims that Gallagher failed to pay overtime wages in violation of the FLSA; failed to pay overtime wages in violation of California wage and hour law and California Business and Professions Code section 17200 *et seq.*; failed to pay wages due at termination of employment in violation of California Labor Code sections 201-203; failed to provide accurate, itemized employee wage statements in violation of California Labor Code section 226; and failed to indemnify employees for business expenses in violation of California Labor Code section 2802.  (*Id.*)  Plaintiffs sought to certify a class composed of themselves and similarly situated individuals and to recover from Gallagher back wages, interest, penalties, and attorneys' fees and costs.  (*Id.*)  On January 6, 2010, Plaintiffs filed a First Amended Consolidated Class Action Complaint which, inter alia, revised certain of their legal theories while retaining the material allegations of their claims.  (Docket No. 59.)  (Decl. Blumenthal, ¶ 9).

Gallagher answered each of Plaintiffs' Complaints, denying the material allegations. Specifically, Gallagher contended (and continues to contend) that the Action could not properly be maintained as a class action; that members of the class were properly classified as exempt from federal and state overtime requirements; that Gallagher did not fail to pay to any members of the class who are former Gallagher employees any wages allegedly due at the time of their termination; that Gallagher provided accurate, itemized wage statements to members of the class; that Gallagher did not fail to indemnify employees for business expenses; that Gallagher did not violate California Business and Professions Code section 17200 et seq; and that Gallagher is not liable for any of the penalties claimed or that could be claimed in the Complaints.  (*See* Docket Nos. 3, 14, 44, 56, 67.)  (Decl. Blumenthal, ¶ 10).

The parties engaged in significant discovery.  (Decl. Blumenthal at ¶11).  Specifically, Plaintiffs served multiple of sets of discovery, consisting of over one hundred document requests and twenty five interrogatories.  (*Id.*)  Plaintiffs also responded to all of the discovery propounded by Gallagher.  (*Id.*)  During the litigation, over ten depositions were conducted, including the depositions of the Plaintiffs, the Plaintiffs' experts, depositions of Gallagher employees, and

1  Gallagher's expert.  (*Id.*)  In total, more than 120,000 pages of documents were produced,

2  reviewed and analyzed by the parties.  (*Id.*)

3  The litigation also involved significant law and motion practice, including a motion to

4  consolidate related cases, a motion to stay, and motion for class certification.  (*See* Docket Nos.

5  38, 98, 104.)  In addition, the motion for class certification and opposition relied on the testimony

6  and reports of three expert witnesses.  (*See* Docket Nos. 64, 69.)  (Decl. Blumenthal, ¶ 12).

7  On April 15, 2010, the District Court certified a class consisting of all persons employed

8  by Gallagher as Claims Representatives and/or Senior Claims Representatives in California since

9  January 28, 2005 who adjusted workers' compensation claims.  (Docket No. 98.)

10  On August 20, 2010, the Parties participated in a mediation presided over by Antonio

11  Piazza of Gregorio, Haldeman, Piazza, Rotman, Frank & Feder LLP.  During the mediation, each

12  side, represented by its respective counsel, recognized the substantial risk of an adverse result in

13  the Action and agreed to this settlement.  (Decl. Blumenthal at ¶13).  The Settlement Agreement

14  represents a compromise and settlement of highly disputed claims.  Nothing in this Agreement is

15  an admission by Gallagher that the claims in the Action have merit or that Gallagher bears any

16  liability to Plaintiffs or the Class on those claims, or as an admission by Plaintiffs that Gallagher's

17  defenses in the Action have merit.

18  Class Counsel has conducted a thorough investigation into the facts of the class action.

19  (Decl. Blumenthal at ¶14).  Class Counsel has diligently evaluated the Settlement Class

20  Members' claims against Gallagher.  The Proposed Settlement Class includes approximately 156

21  non-workers' compensation adjusters who are not members of the class certified by the Court in

22  its April 15, 2010 order.  (*Id.*)  However, plaintiffs originally sought to certify a class that

23  included these individuals, and obtained extensive discovery concerning their jobs, work

24  histories, and compensation.  (*Id.*)  The Action was certified as a class action and the Parties were

25  in final preparation for trial.  Prior to the Parties settling the case, counsel for Gallagher provided

26  Class Counsel with access to data reflecting the work histories and compensation of all

27  Settlement Class Members.  (*Id.*)  Based on the foregoing data and their own independent

28  investigation and evaluation, Class Counsel believes that the settlement with Gallagher for the

consideration and on the terms set forth in this Settlement Agreement is fair, reasonable, and adequate and is in the best interest of the Class in light of all known facts and circumstances, including the risk of significant delay, defenses asserted by Gallagher, and numerous potential appellate issues. (*Id.*) Gallagher and Gallagher's counsel also agree that the Settlement is fair and in the best interest of the Class.

## IV.     THE SETTLEMENT TERMS

### A.     The Gross Settlement Payment

Under the Settlement, Gallagher agrees to pay a Gross Settlement Amount of Three Million, Nine Hundred Dollars ($ 3.9 million).   (Agmt., ¶ III-A.) This payment will cover Settlement Shares to be paid to Settlement Class Members who submit valid claims; a $100,000 payment to the California Labor and Workforce Development Agency for its share of the settlement of civil penalties; the Settlement Administrator's reasonable fees and expenses not to exceed $50,000; and (subject to court approval) payments to Plaintiffs, in addition to their Settlement Shares, of $25,000 each in compensation of their services as Class Representatives and payments to Class Counsel of up to $1,170,000 for their reasonable attorneys' fees and $175,000 for their expenses incurred in investigating the case, prosecuting the case, preparing for and negotiating at the mediation, documenting the Settlement, securing approval of the Settlement, and related tasks.  (*Id.,* ¶ III-B.) There will be no reversion of the Gross Settlement Payment to Gallagher.  (*Id.,* ¶ III-B.)  (Decl. Blumenthal at ¶15).

### B.     Payment of Settlement Shares

After the other amounts are deducted, the Gross Settlement Amount (then called the "Net Settlement Amount") will be distributed as Settlement Shares to all Class Members who submit valid claims (*see* Agmt., ¶ III-C), based upon the following allocation formula:

> The Settlement Share for each Claimant will be calculated by (a) dividing the Net Settlement Amount by the total number of work weeks in a covered position during the Class Period for all Class Members and (b) multiplying the result by each individual Claimant's work weeks in a covered position during the Class Period.

(Agmt., ¶ III-C-1.)  (Decl. Blumenthal at ¶16).

The parties estimate that, if all amounts sought under the Settlement are awarded, a Settlement Class Member's average Settlement Share will be approximately $4,052.   (Decl. Blumenthal at ¶17).

### C.   Distribution of Unclaimed Funds and Uncashed Checks.

Settlement Class Members who do not submit a valid claim will receive no Settlement Share, and their election not to participate will reduce neither the Gross Settlement Amount nor the Net Settlement Amount.   (Agmt.,¶ III-C-3-4.)   Their respective Settlement Shares will be retained in the Net Settlement Amount for distribution to Claimants on a pro rata basis relative to their Settlement Shares up to a double recovery and thereafter *cy pres* equally to the Employee Rights Center of San Diego and the American Cancer Society.   (*Id.*)   In the event that checks issued to Settlement Class Members are not cashed, they will be donated to the same charities. (*Id.*)   (Decl. Blumenthal at ¶18).

### D.   Scope of the Release

The scope of the release by all Participating Class Members (all Settlement Class Members other than those who elect not to participate in the Settlement) tracks the scope of Plaintiffs' allegations:

> Participating Class Members hereby fully and finally release Gallagher, and its parents, predecessors, successors, subsidiaries, affiliates, and trusts, and all of its employees, officers, agents, attorneys, stockholders, fiduciaries, other service providers, and assigns, from any and all claims raised in the Action or otherwise based on or related to the allegations that, from January 28, 2005 to the date the Settlement becomes Final, as defined for purposes of the release period as the last day on which a notice of appeal from the Judgment can be filed with the Court of Appeals, they were denied wages, overtime compensation, meal periods, meal period premiums, breaks, rest break premiums, wage statements in a prescribed format or content, wages owed at termination, reimbursement for business expenses, penalties (including civil penalties under PAGA), and interest, or any other related allegation, whether founded on federal, state, or local law (including the Fair Labor Standards Act), including claims based on the following provisions of the California Labor code:  sections 201-203, 221, 226, 226.7, 510, 512, 551-552, 558,  1174, 1194, 1198, and 2802.

(Agmt., ¶ III-F; Decl. Blumenthal at ¶19).

### E.   Objections and Opt-Out Process

Any Settlement Class Member who so wishes may object to or comment on the Settlement; or elect not to participate in the Settlement. (Decl. Blumenthal at ¶20).

Settlement Class Members who wish to exclude themselves from the Settlement must mail to the Settlement Administrator not later than 45 days after the Settlement Administrator mails the Class Notice Packets a signed Election Not to Participate in Settlement. (Agmt., ¶ III-E-4-c; Exh. A.)

Settlement Class Members who wish to object to the Settlement must file with the District Court and serve on counsel for the Parties not later than 45 days after the Settlement Administrator mails the Class Notice Packets a written comment on or objection to the Settlement, setting forth the grounds for the comment or objection. (Agmt., ¶ III-E-4; Exh. A.)

Before the Notice is disseminated to the Settlement Class Members, Class Counsel will file its motion for attorneys' fees and costs and post that motion on their website. (*Id.,* ¶ III-E-4-b; Decl. Blumenthal at ¶21). The Notice provides instructions for the Settlement Class Members to review the motion. (*Id.,* Exh. A, p. 9.) Settlement Class Members who wish to object to the Class Counsel's Fees and Expense Payment must file with the District Court and serve on counsel for the Parties, not later than 45 days after the Settlement Administrator mails the Class Notice, a written statement objecting to the Settlement and setting forth the grounds for the objection.[3] (*Id.*, ¶ III-E-4; Exh. A.)

### F.   Termination of Settlement

Gallagher reserves the right to void the Settlement if 5% of the Settlement Class Members, measured either by their number or the value of their Settlement Shares, elect not to participate in the Settlement. (Agmt., ¶ III-E-5.)

### G.   Class Representative Payments; Class Counsel Attorneys' Fees Payment and Class Counsel Litigation Expenses Payment.

---

[3] In accordance with *Mercury Interactive Corp. Secs. Litig. v. Mercury Interactive Corp.*, 2010 U.S. App. LEXIS 17189 (9th Cir 2010), the application for attorneys' fees and costs will be filed before the notice is distributed to the Settlement Class, and the notice will direct Settlement Class Members to where they may view the application for attorneys' fees and costs. (Agmt., III-E-4-b.) Thus, all Settlement Class Members will have ample opportunity to review and comment on the attorneys' fees and costs before the objection deadline.

By a separate motion, Plaintiffs and their counsel will seek, and Gallagher has agreed not to oppose, awards to Plaintiffs of Class Representative Payments of $25,000 each, in addition to their Settlement Shares, in compensation for their services as Class Representatives; and awards to Class Counsel of a Class Counsel Attorneys' Fees Payment of not more than $1,170,000 or 30% of the Gross Settlement Amount and a Class Counsel Litigation Expenses Payment of not more than $175,000.   (Agmt., ¶ III-B-1-2; Decl. Blumenthal at ¶22.)

### H.   Timing of Disbursements

Within three days of the Judgment becoming Final, Gallagher will fund the Gross Settlement Amount by depositing the money with the Settlement Administrator.  (Agmt., III-E-10.)  Within ten days after the Judgment becomes Final, the Settlement Administrator will pay to Participating Class Members, the Settlement Shares; to Plaintiffs, the Class Representative Payments; to Class Counsel, the Class Counsel Fees Payment and the Class Counsel Litigation Expenses Payment; to the LWDA, the LWDA Payment; and to the Settlement Administrator, its reasonable fees and expenses.  (*Id.,* ¶ E-12; Decl. Blumenthal at ¶23.)

## V.   THE SETTLEMENT MEETS ALL CRITERIA NECESSARY FOR PRELIMINARY APPROVAL

When a proposed class-wide settlement is reached, the settlement must be submitted to the court for approval.  Fed. R. Civ. P. 23(e)(1)(A); 2 H. Newberg & A. Conte, *Newberg on Class Actions* (3d ed. 1992) at §11.41, p.11-87.  Preliminary approval is the first of three steps that comprise the approval procedure for settlements of class actions.  The second step is the dissemination of notice of the settlement to all class members.  The third step is a final settlement approval hearing, at which evidence and argument concerning the fairness, adequacy, and reasonableness of the settlement may be presented and class members may be heard regarding the settlement. See *Manual for Complex Litigation*, Second §30.44 (1993).

The question presented on a motion for preliminary approval of a proposed class action settlement is whether the proposed settlement is "within the range of possible approval." *Manual*

*for Complex Litigation*, Second §30.44 at 229; *Gautreaux v. Pierce*, 690 F.2d 616, 621 n.3 (7th Cir. 1982); *Williams v. Costco Wholesale Corp*., 2010 WL 761122, *5 (S. D. Cal. March 04, 2010); *Chun-Hoon v. McKee Foods Corp*.,2009 WL 3349549 *2-3 (N.D.Cal., Oct. 15, 2009). Preliminary approval is merely the prerequisite to giving notice so that "the proposed settlement . . . may be submitted to members of the prospective Class for their acceptance or rejection." *Philadelphia Housing Authority v. American Radiator & Standard Sanitary Corp*., 323 F. Supp. 364, 372 (E.D. Pa. 1970).

There is an initial presumption of fairness when a proposed settlement, which was negotiated at arm's length by counsel for the Class, is presented for court approval.  *Newberg*, 3d Ed., §11.41, p.11-88.  However, the ultimate question of whether the proposed settlement is fair, reasonable and adequate is made after notice of the settlement is given to the class members and a final settlement hearing is held by the Court.

The question of whether a proposed settlement is fair, reasonable and adequate necessarily requires a judgment and evaluation by the attorneys for the parties based upon a comparison of "the terms of the compromise with the likely rewards of litigation." *Weinberger v. Kendrick*, 698 F.2d 61, 73 (2d Cir. 1982), cert. denied 464 U.S. 818 (1983) (quoting *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424-25 (1968)). Therefore, the opinion of experienced counsel supporting the settlement is entitled to considerable weight. With regard to class action settlements, the opinions of counsel should be given considerable weight both because of counsel's familiarity with this litigation and previous experience with cases such as these.  *Officers for Justice v. Civil Service Com'n of City and County of S.F.*, 688 F.2d 615, 625 (9th Cir. 1982); *Weinberger, supra*, 698 F.2d at 74; *Barcia v. Contain-A-Way, Inc*., 2009 WL 587844, *4 (S. D .Cal. March 06, 2009); *In re Wash. Public Power Supply System Sec. Litig*., 720 F. Supp. 1379, 1392 (D. Ariz. 1989); *Kirkorian v. Borelli*, 695 F. Supp. 446, 451 (N.D. Cal. 1988).

**A.** **The Role Of The Court In Preliminary Approval Of A Class Action Settlement**

**MEMORANDUM IN SUPPORT OF JOINT MOTION FOR PRELIMINARY SETTLEMENT APPROVAL**

1    The approval of a proposed settlement of a class action suit is a matter within the broad

2    discretion of the trial court.  *Staton v. Boeing*, 327 F.3d 938, 959 (9th Cir. 2003).  Preliminary

3    approval does not require the trial court to answer the ultimate question of whether a proposed

4    settlement is "fair, reasonable and adequate."  *Manual for Complex Litigation*, Third, §§ 20.212.

5    That determination is made only after notice of the settlement has been given to the members of

6    the class and after the class members have been given an opportunity to voice their views of the

7    settlement or to be excluded from the settlement class.  *See, e.g*., 3B J. Moore, *Moore's Federal*

8    *Practice* §§23.80 - 23.85 (2003).

9    In considering a potential settlement for preliminary approval purposes, the trial court

10   does not have to reach any ultimate conclusions on the issues of fact and law which underlie the

11   merits of the dispute and need not engage in a trial on the merits.  *Officers for Justice v. Civil*

12   *Serv. Comm'n*, 688 F.2d 615 (9th Cir. 1982), cert. denied, 459 U.S. 1217 (1983).

13   **B.    Factors To Be Considered In Granting Preliminarily Approval**

14   A number of factors are to be considered in evaluating a settlement for purposes of

15   preliminary approval.  No one factor should be determinative, but rather all factors should be

16   considered.  These criteria have been summarized as follows:

17   If the proposed settlement appears to be the product of serious, informed, non-collusive

18   negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to

19   class representatives or segments of the class, and falls within the range of possible approval, then

20   the court should direct that notice be given to the class members of a formal fairness hearing, at

21   which evidence may be presented in support of and in opposition to the settlement.  *Manual of*

22   *Complex Litigation*, Second §30.44, at 229.  Here, the settlement meets all of these criteria. As

23   the district court held in granting preliminary approval of a wage class action settlement in

24   *Alberto v. GMRI, Inc*., 252 F.R.D. 652 (E.D .Cal. Jun 24, 2008):

25       Given that some of these [final settlement approval] factors cannot be fully assessed until
         the court conducts its fairness hearing, "a full fairness analysis is unnecessary at this stage
26       ...." West, 2006 WL 1652598, at *9 (citation omitted). The court, therefore, will simply
         conduct a cursory review of the terms of the parties' settlement for the purpose of
27       resolving any glaring deficiencies before ordering the parties to send the proposal to class
         members.
28

1    *Id.* at 666.

2           Here, the Settlement meets all of the four criteria for preliminary approval

3           **1.      The Settlement is the Product of Serious, Informed and Noncollusive**
4                    **Negotiations**

5           This settlement is the result of extensive and hard fought negotiations.  (Decl. Blumenthal
6    ¶ 25.)  Gallagher denies each and every one of the claims and contentions alleged in this Action.
7    Gallagher has asserted many defenses, and has expressly denied any wrongdoing or legal liability
8    arising out of the conduct alleged in the Action.   Nonetheless, Gallagher has concluded that this
9    Action should be settled in the manner and upon the terms and conditions set forth in the
10   Settlement Agreement in order to avoid the expense, inconvenience, and burden of further legal
11   proceedings, and the uncertainties of trial and appeals.  Gallagher has decided to put to rest the
12   Released Claims.

13          The parties scheduled a private mediation to take place before Anthony Piazza, one of the
14   preeminent mediators of wage and hour class actions.  Prior to mediation, the parties engaged in
15   extensive discovery, and Class Counsel received time records and payroll information for the
16   members of the Settlement Class.  (Decl. Blumenthal ¶ 26.)  Plaintiffs analyzed the data with the
17   assistant of damages expert DM&A and prepared and submitted a mediation brief to Mr. Piazza.
18   (*Id.*, ¶ 26.)  As a result, the parties reached an agreement based upon the experience of the Parties'
19   attorneys as Counsel in other wage and hour cases and also in light of the uncertainties of
20   protracted litigation.  (*Id.*, ¶ 26.)  Most importantly, Plaintiffs and Class Counsel believes that this
21   settlement is fair, reasonable and adequate.

22          Class Counsel has conducted a thorough investigation into the facts of the class action,
23   including an extensive review of relevant documents and data, and have diligently pursued an
24   investigation of the Settlement Class Members' claims against Gallagher.  (Decl. Blumenthal, ¶
25   27).  Based on the foregoing documents and data and their own independent investigation and
26   evaluation, Class Counsel is of the opinion that the settlement with Gallagher for the
27   consideration and on the terms set forth in this Settlement Agreement is fair, reasonable, and

28

1  adequate and is in the best interest of the class in light of all known facts and circumstances,

2  including the risk of significant delay, defenses asserted by Gallagher, and numerous potential

3  appellate issues.  (*Id.,* ¶ 27.)  Gallagher and Gallagher's counsel also agree that the Settlement is

4  fair and in the best interest of the Settlement Class Members.  (*Id.,* ¶ 27.)

5         Plaintiffs and Class Counsel recognize the expense and length of continuing to litigate and

6  trying this Action against Gallagher through possible appeals which could take several years.

7  Class Counsel has also taken into account the uncertain outcome and risk of litigation, especially

8  in complex actions such as this Action.  Class Counsel is also mindful of and recognize the

9  inherent problems of proof under, and alleged defenses to, the claims asserted in the Action.

10 Based upon their evaluation, Plaintiffs and Class Counsel has determined that the settlement set

11 forth in the Settlement Agreement is in the best interest of the Settlement Class Members.  (Decl.

12 Blumenthal at ¶28).

13        Here the negotiations have been hard-fought and aggressive with capable advocacy on

14 both sides.   Accordingly, "[t]here is likewise every reason to conclude that settlement

15 negotiations were vigorously conducted at arms' length and without any suggestion of undue

16 influence."  *In re Wash. Public Power Supply System Sec. Litig.,* 720 F. Supp. 1379, 1392 (D.

17 Ariz. 1989).

18
           **2.      The Settlement Has No "Obvious Deficiencies" and Falls Within the**
19                 **Range for Approval**

20        The proposed Settlement herein has no "obvious deficiencies" and is well within the range

21 of possible approval.

22        The Plaintiffs' calculations of potential liability were calculated by DM&A, Plaintiffs'

23 damage expert.  (Blumenthal Decl., ¶ 6).  Pursuant to this calculation, the potential damages

24 available to class members if they prevailed on their claims was approximately $15,205, 859.17.

25 (*Id.,* ¶ 6.)  The settlement of $3.9 million therefore represents 25.64% of the subject damage

26 claim as calculated by Plaintiff's expert.  (*Id.,* ¶ 6.)  Clearly the goal of this litigation has been

27 met.  (*Id.,* ¶ 6.)

28

1    Where both sides face significant uncertainty, the attendant risks favor settlement.  *Hanlon*

2    *v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998).  Here, a number of defenses asserted by

3    Gallagher present serious threats to the claims of Plaintiffs and the other Class Members. For

4    example, Gallagher contended that the Class Members were barred from recovery by the

5    administrative exemption.  As the Court recognized in its order granting class certification, while

6    merits issues common to the entire class cannot defeat class certification, the merits of the

7    administrative exemption was far from certain.   (Decl. Blumenthal at ¶30). In fact, federal

8    regulations provide that the FLSA administrative exemption generally applies to insurance claims

9    adjustors:

> Insurance claims adjusters generally meet the duties requirements for the administrative exemption, whether they work for an insurance company or other type of company, if their duties include activities such as interviewing insureds, witnesses and physicians ... reviewing factual information to prepare damage estimates1; evaluating and making recommendations regarding coverage of claims; determining liability and total value of a claim; negotiating settlements; and making recommendations regarding litigation.

14   29 C.F.R. § 541.203(a).

15   As the Ninth Circuit explained in *In re Farmers Ins. Exch.*, 466 F.3d 853 (9th Cir. 2006):

> For more than 50 years, the Department of Labor has considered claims adjusters exempt from the Fair Labor Standards Act's overtime requirement. In 2004, the DOL promulgated 29 C.F.R. § 541.203, which it viewed as "consistent with" existing law. Section 541.203 exempts claims adjusters if they perform activities such as  interviewing witnesses, making recommendations regarding coverage and value of claims, determining fault and negotiating settlements.

20   *Id*. at 855.

21   In light of this adverse federal authority, and uncertainties under California law there was

22   a very serious risk that this case could have been lost on summary judgment, trial or appeal if it

23   was not settled.  There was also a significant risk that, if the litigation was not settled, Defendants

24   might have successfully moved for class decertification. As the Ninth Circuit explained has

25   "before entry of final judgment on the merits, a district court's order respecting class status is not

26   final or irrevocable, but rather, it is inherently tentative").  *Officers for Justice v. Civil Service*

27   *Comm'n of City and County of San Francisco*, 688 F.2d 615, 633 (9th Cir.1982).   In *Wamboldt v.*

28   *Safety-Kleen Systems, Inc.*, 2010 WL 3743925 (N.D. Cal. September 20, 2010) the court recently

granted a motion to decertify an overtime wage case concluding that "there are simply too many individualized issues that arise in connection with application of the motor carrier exemption to plaintiffs' overtime claim, such that the individual issues will predominate over common ones at trial." *Id*. at \*10; *See also Marlo v. United Parcel Service, Inc*., 251 F.R.D. 476, 488 (C.D.Cal.2008) (decertifying overtime wage class after subsequent discovery, motion practice, and trial preparations revealed that requirement of predominance of common issues was not satisfied); *Chun-Hoon v. McKee Foods Corp*., --- F.Supp.2d ----, 2010 WL 2340811 (N.D. Cal. June 07, 2010) (acknowledged risk of decertification in overtime wage case favored settlement approval); *Cruz v. Dollar Tree Stores, Inc*., 2010 WL 3619800 (N.D.Cal. September 09, 2010) (granting in part motion for decertification of overtime wage class action).

Gallagher would have most likely sought decertification, arguing that individual issues predominated because the applicability of the administrative exemption would have to be separately determined for each Class Member based on their individual experience.  A motion for decertification in this action would have been hotly disputed and was by no means a foregone conclusion.  (Decl. Blumenthal at ¶31).

After vigorous negotiations, including the preparation and submission of mediation briefs to mediator Anthony Piazza, as well as a study of hard data provided to Plaintiff's expert, the parties recognized the potential risks and agreed on the settlement of $3.9 million.  As the district court held in *Glass v. UBS Fin. Servs*., 2007 U.S. Dist. LEXIS 8476 (N.D. Cal. January 27, 2007), where the parties faced uncertainties similar to those here:

> In light of the above-referenced uncertainty in the law, the risk, expense, complexity, and likely duration of further litigation likewise favors the settlement. Regardless of how this Court might have ruled on the merits of the legal issues, the losing party likely would have appealed, and the parties would have faced the expense and uncertainty of litigating an appeal.  "The expense and possible duration of the litigation should be considered in evaluating the reasonableness of [a] settlement."  See *In re Mego Financial Corp. Securities Litigation*, 213 F.3d 454, 458 (9th Cir. 2000).

Id. at \*12.

Here, the risk of further litigation is substantial and further supports the fairness, adequacy and reasonableness of the Settlement Agreement.

1

2

       **3.**       **The Settlement Does Not Improperly Grant Preferential Treatment To The Class Representative or Segments Of The Class**

3

      The relief provided in the settlement will benefit all Settlement Class Members equally.

4

The settlement does not improperly grant preferential treatment to the Class Representative or any

5

individual segments of the Class.  (Decl. Blumenthal at ¶17).

6

      Each Settlement Class Member, including the Named Plaintiffs, will be entitled to

7

payment based on the plan of allocation.  Each Settlement Class Member's lump sum payment

8

will be determined as follows:

9

      The Net Settlement Amount will be distributed to the Settlement Class Members who

10

submit a valid claim, in accordance with their respective Settlement Share.  The Settlement Share

11

for each Claimant will be calculated by (a) dividing the Net Settlement Amount by the total

12

number of work weeks in a covered position during the Class Period for all Settlement Class

13

Members and (b) multiplying the result by each individual Claimant's work weeks in a covered

14

position during the Class Period.   (Agmt., ¶ III-C-1.)  All Settlement Class Members who submit

15

a valid claim form will receive money under the Settlement and no money will revert to

16

Gallagher.  (*Id.,* ¶¶ III-A, C.)

17

      Plaintiffs will each apply to the Court for a service award of $25,000.  (Agmt., ¶ III-B-1.)

18

In *Glass*, the district court recently awarded each of the class representatives in an overtime

19

wages class action a service award of $25,000.  2007 U.S. Dist. LEXIS 8476 at *51-52.  The

20

amount of the requested service awards are below the awards approved in other cases.  *Van*

21

*Vranken v. Atlantic Richfield Co*., 901 F.Supp. 294, 299-300 (N.D. Cal. 1995) (award of

22

$50,000);  *In re Dun & Bradstreet Credit Servs. Customer Litig.*, 130 F.R.D. 366 (S.D. Ohio

23

1990) (two incentive awards of $55,000, and three incentive awards of $ 35,000); *Brotherton v.*

24

*Cleveland*, 141 F.Supp.2d 907, 913-14 (S.D.Ohio 2001) (approving a $50,000 service award);

25

Enter. *Energy Corp. v. Columbia Gas Transmission Corp*., 137 F.R.D. 240 (S.D. Ohio 1991)

26

($50,000 awarded to each class representative).  (Decl. Blumenthal at ¶22).

27

28

**MEMORANDUM IN SUPPORT OF JOINT MOTION FOR PRELIMINARY SETTLEMENT APPROVAL**

1

2

**4.      The Stage Of The Proceedings Is Sufficiently Advanced To Permit Preliminary Approval Of The Settlement**

3      The stage of the proceedings at which this settlement was reached also militates in favor

4   of preliminary approval and ultimately, final approval of the settlement.   Class Counsel has

5   conducted a thorough investigation into the facts of the class action.   (Decl. Blumenthal at ¶32.)

6   Class Counsel began investigating the Settlement Class Members' claims before this action was

7   filed.   (*Id.,* ¶32.)   Class Counsel also obtained production of extensive business and payroll

8   records produced through discovery and discovery was nearly complete.   (*Id.,* ¶32.)   Class

9   Counsel engaged in an extensive review and analysis of the relevant documents and data with the

10  assistance of experts.  (*Id.,* ¶32.)  Class Counsel has successfully moved for class certification and

11  was actively engaged in expert discovery and final preparation for trial at the time the settlement

12  was reached.  (*Id.,* ¶32.)   Accordingly, the agreement to settle did not occur until Class Counsel

13  possessed sufficient information to make an informed judgment regarding the likelihood of

14  success on the merits and the results that could be obtained through further litigation.  (*Id.,* ¶32.)

15      Based on the foregoing data and their own independent investigation and evaluation, Class

16  Counsel is of the opinion that the settlement with Gallagher for the consideration and on the terms

17  set forth in this Settlement Agreement is fair, reasonable, and adequate and is in the best interest

18  of the class in light of all known facts and circumstances, including the risk of significant delay,

19  defenses asserted by Gallagher, and numerous potential appellate issues.  (Decl. Blumenthal ¶

20  33).   Gallagher and Gallaghers' counsel also agree that the Settlement is fair and in the best

21  interest of the Settlement Class Members.   There can be no doubt that Counsel for both parties

22  possessed sufficient information to make an informed judgment regarding the likelihood of

23  success on the merits and the results that could be obtained through further litigation.   Class

24  Counsel conducted significant discovery as well as independent investigations and due diligence

25  to confirm the accuracy of the information supplied by Gallagher.  (*Id.,* ¶33.)

26  **VI.      CONDITIONAL CERTIFICATION OF A SETTLEMENT CLASS IS APPROPRIATE.**

27

28      Pursuant to Rule 23(c)(1), Federal Rules of Civil Procedure, the Court may "make a

conditional determination of whether an action should be maintained as a class action, subject to final approval at a later date." *Fry v. Hayt, Hayt & Landau*, 198 F.R.D. 461, 466 (E.D. Pa. 2000) (citing Fed. R. Civ. P. 23(c)(1)).

On April 15, 2010, the Court granted plaintiffs motion for class certification and certified the following class:

> All individuals who, while in California, work or previously worked for Defendants as Claims Representatives and/or Senior Claims Representatives who processed Worker's Compensation Claims in the State of California during the period four years prior to the filing of this Complaint and ending on the date as determined by the Court.

(Docket No. 98.)   This class consisted of approximately 449 individuals.   (Decl. Blumenthal ¶ 34).

The Settlement Class is defined as follows:

> All persons who work or worked for Gallagher Bassett Services, Inc. in California, at any time from January 28, 2005 through the date of preliminary court approval of the Settlement, as a Claim Representative, Senior Claim Representative, Claims Adjustor, Claims Adjustor Senior, and/or Claims Specialist.

The only difference between the certified class and the proposed Settlement Class is that the Settlement Class includes approximately 126 non-workers' compensation insurance adjusters. (Decl. Blumenthal ¶ 35).   As described below, the parties agree for purposes of the Settlement only that the requirements for class certification are met.

**A.      The Numerosity Requirement Is Met.**

The numerosity requirement is met if the class is so large that joinder of all members would be impracticable.  *Gay v. Waiters' & Dairy Lunchmen's Union*, 489 F. Supp. 282 (N.D. Cal. 1980), *aff'd*, 694 F.2d 531 (9th Cir. 1982).  Here, the count of approximately 575 Settlement Class Members satisfies the numerosity requirement.  (Decl. Blumenthal ¶ 35(a).)

**B.      The Commonality Requirement Is Met.**

Here, for purposes of the Settlement only, the parties agree that common questions of both fact and law exist regarding Gallagher's alleged failure to abide by wage-and-hour law, including whether Gallagher misclassified the employees as exempt from overtime requirements, and failed

to provide meal periods and rest breaks, indemnify employees reasonable business expenses, pay all wages owed to former employees at termination, and issue accurate itemized wage statements. (Decl. Blumenthal ¶ 35(b).)

### C.     The Typicality Requirement Is Met.

"Rule 23(a)(3) requires that the claims of the named parties be typical of the claims of the members of the class." *Fry*, 198 F.R.D. at 468. "Under the rule's permissive standards, representative claims are 'typical' if they are reasonably coextensive with those of absent class members; they need not be substantially identical." *Hanlon*, 150 F.3d at 1020.

For purposes of the Settlement only, the parties agree that Plaintiffs' claims are typical of those of the Settlement Class as whole. (Decl. Blumenthal ¶ 35(c).)

### D.     Adequacy of Representation.

To meet the adequacy of representation requirement in Rule 23(a)(4), Plaintiffs must show that: "(1) that the putative named plaintiff has the ability and the incentive to represent the claims of the class vigorously, (2) that he or she has obtained adequate counsel, and (3) that there is no conflict between the individual's claims and those asserted on behalf of the class." *Fry*, 198 F.R.D. at 469.

The parties agree for purposes of the Settlement only that the adequacy of representation requirement is met here because Plaintiffs have the same interests as the remaining members of the Settlement Class, there is no conflict between the named Plaintiffs' claims and those of the other Settlement Class Members, and Plaintiffs are represented by experienced and competent counsel. (Decl. Blumenthal ¶¶ 35(d), 37.)

### E.     Class Certification Is Proper Under Rule 23(b)(3).

In addition to demonstrating the four prerequisites of Rule 23(a), class certification requires a showing that certification is proper under one of the three requirements of Rule 23(b). Here, the parties agree for purposes of the Settlement only that certification of the Settlement Class is appropriate under Rule 23(b)(3) because "questions of law or fact common to the

1   members of the class predominate over any questions affecting only individual members, and…a

2   class action is superior to other available methods for the fair adjudication of the controversy."

3   Fed. R. Civ. P. 23(b)(3).  (Decl. Blumenthal ¶ 35(e).)

4   **VII.   THE PROPOSED METHOD OF CLASS NOTICE IS APPROPRIATE**

5          The Parties have agreed upon procedures by which the Class will be provided with written

6   notice of the Settlement similar to that approved and utilized in hundreds of class action

7   settlements.  The Parties have jointly drafted a Notice of Preliminary Approval of the Settlement,

8   attached to <u>Exhibit 1</u> to Blumenthal Declaration as <u>Exhibit "A"</u>, which is hereby submitted to the

9   District Court for Approval.  (Decl. Blumenthal at ¶38).

10         The Claims Administrator will mail individual Notices to the members of the Settlement

11  Class via first-class regular U.S. mail using the most current mailing address information

12  available from Gallagher's payroll records, which shall be updated by the Claims Administrator

13  to correct for any known or identifiable address changes.  (Agmt., ¶ III-D.)  After the District

14  Court enters its order granting Preliminary Approval of the Settlement, every Class Member will

15  be provided with the Class Notice Packet (which will include the Class Notice completed to

16  reflect the order granting Preliminary Approval of the Settlement and the Claim Form completed

17  to show the Class Member's Class Data) as follows:

18         No later than 14 days after the District Court enters its order granting Preliminary

19  Approval of the Settlement, Gallagher will provide to the Settlement Administrator an electronic

20  database containing for each Class Member his or her Class Data.  (Agmt., ¶ III-E-2-a.)  Using

21  best efforts to mail it as soon as possible, and in no event later than 7 days after receiving the

22  Class Data, the Settlement Administrator will mail the Class Notice Packets to all Settlement

23  Class Members via first-class regular U.S. Mail using the mailing address information provided

24  by Gallagher, unless modified by any updated address information that the Settlement

25  Administrator obtains in the course of administration of the Settlement.  (*Id., ¶* III-E-2-b.)

26         If a Class Notice Packet is returned because of an incorrect address, the Settlement

27  Administrator will promptly search for a more current address for the Class Member and re-mail

28  the Class Notice Packet to the Class Member.  (*Id., ¶* III-E-2-c.)  The Settlement Administrator

1  will use the Class Data and otherwise work with Gallagher to find that more current address.  (*Id.*)

2  The Settlement Administrator will be responsible for taking reasonable steps, consistent with its

3  agreed-upon job parameters, court orders, and fee, as agreed to with Class Counsel and according

4  to the following deadlines, to trace the mailing address of any Class Member for whom a Class

5  Notice Packet is returned by the U.S. Postal Service as undeliverable.  (*Id.*)  These reasonable

6  steps shall include, at a minimum, the tracking of all undelivered mail; performing address

7  searches for all mail returned without a forwarding address; and promptly re-mailing to

8  Settlement Class Members for whom new addresses are found.  (*Id.*)

9  Not later than the date by which the Parties file their joint motion for final approval of the

10  Settlement, the Settlement Administrator will serve on the Parties and file with the Court a

11  declaration of due diligence setting forth its compliance with its obligations under this

12  Agreement.  (Agmt., ¶ III-E-2-e.)  Prior to the Final Approval Hearing, the Settlement

13  Administrator will supplement its declaration of due diligence if any material changes occur from

14  the date of the filing of its prior declaration.  (*Id.*)

15  The Notice, drafted jointly and agreed upon by the Parties through their respective

16  counsel,  includes information regarding the nature of the litigation; a summary of the substance

17  of the Settlement, including Gallagher's denial of liability; the definition of the Settlement Class;

18  the procedure and time period for objecting to the Settlement and participating in the Final

19  Approval hearing; a statement that the District Court has preliminarily approved the Settlement;

20  and information regarding the claims filing procedure and the opt-out procedure.  (*See* Agmt.,

21  Exh. A.)  Attached to the Notice will be a Claim Form and Request for Exclusion Form, for

22  making claims or requesting exclusion from the settlement.  (Agmt., Exhs. B-C.)

23  The Settlement Class Members will have 60 days after the date on which the Settlement

24  Administrator mails the Class Notice Packets to complete and submit to the Settlement

25  Administrator the Claim Form.  (Agmt., ¶ III-E-3.)  Settlement Class Members will have the

26  opportunity to challenge the Class Data pre-printed on their individualized Claim Forms by

27  submitting a written challenge along with their signed Claim Form and supporting documentation

28  to the Settlement Administrator within the time period provided for submitting the Claim Form.

(*Id.,* ¶ III-E-3-a.) In the event that a Claim Form is submitted timely but is deficient in one or more respects, the Settlement Administrator will return the Claim Form to the Class Member within seven days of receipt with a notice explaining the deficiencies and stating that the Class Member will have ten days from the date of the deficiency notice to correct the deficiency and resubmit the Claim Form.  (*Id.,* ¶ III-E-3-b.)  If necessary, the Class Member will be sent a second deficiency notice to correct any deficiency concerning a resubmitted Claim Form, which will be governed by the same timeliness requirements as the first deficiency notice.  (*Id.*)

The Class Notice will provide that Settlement Class Members who wish to object to the Settlement must file with the District Court and serve on counsel for the Parties not later than 45 days after the Settlement Administrator mails the Class Notice Packets a written comment on or objection to the Settlement setting forth the grounds for the comment or objection.  (Agmt., ¶ III-E-4; Exh. A.)

Before the Notice is disseminated to the Settlement Class Members, Class Counsel will file its motion for attorneys fees and costs and post that motion on their website.  (*Id.,* ¶ III-E-4-b.)  The Notice provides instructions for the Settlement Class Members to review the motion. (*Id.,* Exh. A, p. 9.)  Settlement Class Members who wish to object to the Class Counsel's Fees and Expense Payment must file with the District Court and serve on counsel for the Parties, not later than 45 days after the Settlement Administrator mails the Class Notice, a written statement objecting to the Settlement and setting forth the grounds for the objection.  (*Id.*, ¶ III-E-4; Exh. A.)

The Class Notice also provides that Settlement Class Members who wish to exclude themselves from the Settlement must mail to the Settlement Administrator not later than 45 after the Settlement Administrator mails the Class Notice Packets a signed and notarized Election Not to Participate in Settlement.  (Agmt., ¶ III-E-4-c; Exh. A.)  Non-Participating Class Members will not participate in or be bound by the Settlement and the Judgment.  (*Id.*)

This notice program was designed to meaningfully reach the largest possible number of potential Settlement Class Members.  The mailing and distribution of the Notice satisfies the requirements of due process and is the best notice practicable under the circumstances and

constitutes due and sufficient notice to all persons entitled thereto. This Notice satisfies the content requirements for notice following the exemplar class notice in the Manual for Complex Litigation, Second §41.43. This Notice also fulfills the requirement that Class notices be neutral. Newberg,§8.39.[4]

## VIII.   THE COURT SHOULD APPOINT GILARDI & CO. AS THE SETTLEMENT ADMINISTRATOR

The Parties have agreed upon and propose that the Court appoint Gilardi & Co. to serve as the Settlement Administrator. Gilardi is very experienced in administering wage-and-hour class action settlements, and has bid its fees and costs for this Settlement at no more than $50,000. (Decl. Blumenthal at ¶24).

## IX.   CONCLUSION

Counsel for the Parties have committed substantial amounts of time, energy, and resources litigating and ultimately settling this case. In the judgment of Plaintiffs and Class Counsel, the proposed settlement is a fair and reasonable compromise of the issues in dispute in light of the strengths and weaknesses of each party's case. After weighing the substantial, certain and immediate benefits of these settlements against the uncertainty of trial, and appeal, Plaintiffs believe the proposed settlement is fair, reasonable and adequate, and warrants this Court's preliminary approval.

Accordingly, Plaintiffs respectfully request that the Court:  (1) conditionally certify the Settlement Class and grant preliminary approval of the Settlement; (2) approve the Class Notice, Claim Form, form of Election Not to Participate to be distributed to Settlement Class Members; (3) appoint Gilardi & Co. to act as the Settlement Administrator; and (4) schedule a Final Approval Hearing.

---

[4] Pursuant to the Class Action Fairness Act, 28 U.S.C. § 1711 *et seq.* ("CAFA"), not later than ten days after the parties file this motion, Gallagher will serve upon the Attorney General of the United States and the appropriate state official of each state in which a Settlement Class Member resides a notice of the Settlement consisting of: a copy of the pleadings in this action; a notice of the scheduled judicial hearings in this action; copies of the Settlement, Class Notice, and related materials; and the names of Class Members who reside in each state and the estimated proportionate share of the Class Members in each state compared to the entire Settlement.

Dated: October ___, 2010

**BLUMENTHAL NORDREHAUG & BHOWMIK**

By: ___*/s/ Norman B. Blumenthal*_____
        Norman B. Blumenthal, Esq

**UNITED EMPLOYEES LAW GROUP**
Walter Haines (Bar No. 71075)
65 Pine Avenue, #312
Long Beach, CA 90802
Telephone: (877) 696-8378
Facsimile: (562) 256-1006

**JAMES HAWKINS, APLC**
James R. Hawkins (SB# 192925)
Gregory E. Mauro (SB# 222239)
9880 Research Drive, Suite 200
Irvine, CA  92618
Telephone:  (949) 387-7200
Facsimile:  (949) 387-6676

**LAW OFFICES OF SEAN S. VAHDAT &
ASSOCIATES**
Sean Sasan Vahdat (SB# 239080)
7700 Irvine Center Drive, Suite 800
Irvine, CA  92618
Telephone:  (949) 788-2949
Facsimile:  (949) 788-2950

Attorneys for Plaintiffs

Dated:  October ___, 2010

**PAUL, HASTINGS, JANOFSKY & WALKER LLP**


By:_____
                M. KIRBY C. WILCOX

Attorneys for Defendants

**MEMORANDUM IN SUPPORT OF JOINT MOTION FOR PRELIMINARY SETTLEMENT APPROVAL**